Alan J. **BANNISTER,** Petitioner,

v.

Bill **ARMONTROUT,** et al., Respondents.

No. 87–0637–CV–W–9.

United States District Court,
W.D. Missouri, W.D.

Aug. 23, 1991.

Order Denying Motion to Alter,
Amend or Reconsider April 30, 1992.

---

518

Bruce E. Baty, Morrison & Hecker, Kansas City, MO, for petitioner.

Stephen D. Hawke, Patrick Leroy King, Missouri Atty. Gen.'s Office, Jefferson City, MO, for respondents.

## ORDER DENYING PETITIONER'S REQUEST FOR A WRIT OF HABEAS CORPUS

BARTLETT, District Judge.

### I. *Procedural History*

Petitioner Alan J. Bannister (Bannister) was convicted of the capital murder of Darrell Ruestman and sentenced to death in the Circuit Court of McDonald County, Missouri, on March 10, 1983. The Missouri Supreme Court affirmed his conviction and sentence. *State v. Bannister*, 680 S.W.2d 141 (Mo.1984). Thereafter, Bannister filed a motion under Missouri Supreme Court Rule 27.26 which the sentencing court denied on December 17, 1985. Bannister's appeal from that denial was unsuccessful. *Bannister v. State*, 726 S.W.2d 821 (Mo. App.1987). On July 16, 1987, Bannister filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 23, 1987, Bannister's execution was stayed in order to review his habeas petition. On July 29, 1987, attorney Bruce Baty was appointed to represent Bannister.

On September 17, 1987, Bannister was granted leave to amend his habeas petition and his first amended habeas petition was filed. On December 14, 1987, the State responded to the Order to Show Cause. On February 22, 1988, Bannister again filed a motion to amend his habeas petition and to hold his habeas petition in abeyance pending resolution in state court of his second Rule 27.26 motion which was filed in the Circuit Court of McDonald County, Missouri, on February 26, 1988. On July 19, 1988, I issued an order dismissing Bannister's petition for a writ of habeas corpus without prejudice in favor of exhaustion of state remedies.

Bannister's second Rule 27.26 motion was denied by the state trial court on April 12, 1988. A notice of appeal was filed from that adverse ruling on April 13, 1988, and the case was transferred to the Missouri Court of Appeals, Southern Division. On June 30, 1988, the appeal was transferred to the Missouri Supreme Court at its direction. On September 1, 1988, the Missouri Supreme Court affirmed the judgment of the second Rule 27.26 stating that "[a]ll state remedies have been exhausted relating to Alan Bannister's conviction, sentence and judgment."

On September 8, 1988, Bannister filed supplemental suggestions in support of his August 1, 1988, motion to amend or alter judgment requesting that I vacate the July 19, 1988, order dismissing Bannister's petition because all claims had been exhausted. On October 26, 1988, Bannister filed a motion for stay of execution to provide an opportunity to review his habeas petition.

On October 28, 1988, I issued an order staying execution. Also on October 28, 1988, I issued an order granting Bannister's motion to amend or alter judgment in which I vacated the July 19, 1988, order and reinstated Bannister's request for habeas review. On January 12, 1989, I granted Bannister's February 22, 1988, motion for leave to file a second amended habeas petition because all claims raised therein had been exhausted. Furthermore, in a memorandum filed on January 12, 1989, I deferred ruling on all pending discovery

motions until the State's response and Bannister's traverse had been filed and examined. Pending resolution of these discovery motions, I ordered certain discovery collected and preserved.

On January 13, 1989, Bannister filed his second amended habeas corpus petition in which he raised additional claims raised in his second Rule 27.26 motion. On February 9, 1989, the State filed a supplemental response to its initial response filed on December 14, 1987. Bannister filed a traverse on March 20, 1989. The State filed a second supplemental response on May 5, 1989. On October 19, 1989, I issued an Order Permitting Further Briefing by Bannister on the issue of whether Ground 21 of his Second Amended Petition for Writ of Habeas Corpus was procedurally barred. On November 6, 1989, Bannister filed a supplemental brief in response to the State's contention that Ground 21 was procedurally barred.

## II. *Background*

In August 1982, Bannister was asked by a man named Ronald Rick Wooten, also known as "Indian," whether he would like to make some money by killing a man. Indian explained that a man whose wife left him for another man wanted to have the latter killed. If Bannister accepted the job, he would receive $4,000 to commit the murder—$1,500 in advance and the remainder upon proof of death with a newspaper report. Indian would provide a gun and transportation. Bannister accepted the offer.

The victim was Darrell Reustman. He was living at the Shady Lane Mobile Home Park in Joplin, Missouri. Also living with Reustman was Linda McCormick who was then married to Richard McCormick.

On August 20, 1982, Bannister arrived in Joplin and registered at a motel under a name different from his own. On August 21, 1982, at approximately 10:00 p.m., Linda McCormick was awakened by knocking at the door of the trailer where she and Reustman were living. When Reustman answered the door, Bannister fatally shot him.

At approximately 5:00 a.m. on August 22, 1982, Bannister was arrested by Joplin and Newton County police officers for the murder of Darrell Reustman. Bannister was identified in a lineup by McCormick and two other witnesses as a man seen near the Reustman trailer shortly before the murder. Subsequently, Bannister revealed to the police many details of the crime and led officers to certain pieces of physical evidence including the murder weapon.

On February 3, 1983, a jury found Bannister guilty of capital murder and later that evening recommended the death penalty. The aggravating circumstances designated by the jury were that Bannister had a history of serious assaultive convictions and that Bannister murdered Darrell Reustman for the purpose of receiving money.

## III. *Discussion*

In the discussion that follows, the grounds for relief are numbered according to their number in Bannister's Second Amended Petition. I will address Bannister's claims in the order in which Bannister presents them in his Traverse. Bannister grouped them by subject matter rather than by following the order in which they were set out in his Second Amended Habeas Corpus Petition. I will depart from that organizational scheme primarily when addressing grounds for relief that Bannister first raised in his second Rule 27.26 motion.

In his Traverse, Bannister states that he is abandoning Grounds 1, 8, 16 and 20. Also, Grounds 3, 5, 12, 14, 17 and portions of 13 are deemed abandoned because Bannister does not discuss them in his Traverse or provide any reasons anywhere in the record why relief should be granted on those grounds.

### A. Jury Panel Claims
#### Ground 11

*Bannister was not denied his right to due process and an impartial jury where the trial court limited the scope of voir dire examination*

■ Bannister argues that the trial court denied his right to due process and an

impartial jury by refusing to permit him to use open-ended questions to determine a prospective juror's true feelings about the death penalty.

Bannister's claim that his rights to due process and to an impartial jury were violated is based on the following excerpts from the voir dire:

Mr. Gordon [defense counsel]: [L]et me just ask you, what religious persuasion do you follow?

Venireman Christerson: Methodist.

Mr. Gordon: Do you know if the Methodist Church of the National Institution has any declared policy on the death penalty?

Venireman Christerson: No, I don't.

Mr. Gordon: You're not aware of that?

Venireman Christerson: I don't know if they do or not.

Mr. Lentz [prosecutor]: Your Honor, may we approach the bench?

(The following proceedings were had out of the hearing of the jury panel:)

Mr. Lentz: Your Honor, at this time I would object to voir diring on the death penalty. I followed the case, I believe the only question permissible on that attitude. I'd ask the court to make a ruling on it now. They are apparently going to voir dire on what their church or anybody else feels about the death penalty. I think the question is extremely limited to the question as I gave it to the jury out of the leading case in the matter.

Mr. Gordon: If it pleases the court, I'm not aware that only one question can be asked, and I would suggest that there are at least two areas, one challenge is for cause, and the other challenge is for peremptory challenges, and that in fairness, I ought to be able to delve into this just a little bit further to determine if there is a basis for an intelligent decision on my part, and at least for peremptory challenges.

Mr. Lentz: Your Honor, I have this case here, it's 447 [477] SW 2d 552, and it says that the provision, 546.1300, which allows the State to, and the defense to voir dire the parties on their decision on the death penalty, it follows Witherspoon, and I

think it's clear that the question anymore is of conscientious and religious scruples which would make it difficult for them too. That would be religious or moral or conscientious scruples, and I feel that the question is if they could never vote to impose the death penalty and it has been answered, and I would ask the Court to limit it, if not in this case, limit him carefully on this because I'm not allowed to go into it.

The Court: I think I'll let you go into the further area as to their religious affiliation if you desire to do that. The thing that would bother me is that if you are just asking an open-ended question here that would in effect let the juror go into some kind [of] discourse. I think we're going to be here a long time if you do that. I'm not going to tell you you can't do that. I'd prefer that you didn't.

Mr. Gordon: Thank you, Your Honor. Tr. 386–88.

Counsel then asked Christerson about whether he had ever held an office in his church. No attempt was made to ask further questions about religion. Tr. 388–89.

Later, petitioner's counsel asked the following question of Venireman Christerson:

Mr. Gordon: Okay. Now, there again, the prosecutor mentioned something about the death penalty as a possibility in this kind of case. The other possibility would include prison. How do you feel about prison as punishment?

Mr. Lentz: Your Honor, could we approach the bench?

The Court: Objection is sustained.

(The following proceedings were had out of the hearing of the jury panel:)

Mr. Gordon: Your Honor is not going to allow me to argue at all?

The Court: Yes, you can make your argument.

Mr. Lentz: He's allowed to address the issue whether they consider the full range of punishment, and not what they think about prison itself.

The Court: Make your argument.

Mr. Gordon: If it please the court, I think that whether a person is convicted

or not convicted, how harsh they will be has something to [do] with their attitude about prison as punishment, and I think it's not directed solely to the issue of the death penalty, but whether or not they would be a fair and impartial juror in this kind of criminal case, and I would respectfully ask the court to allow me to inquire as to their attitudes about prison as a punishment. Now, we're not talking about alternatives.

Mr. Lentz: The question what do you think about prison, that opens up everything.

The Court: That's the reason I'm sustaining it. That's just wide open. If you want to ask the question that calls for a yes or no answer, that may be something else, but I just don't think you ought to open this up for them to give a discourse on. Your question is too broad.

Mr. Gordon: Do I understand that the court's ruling is that I may not ask any open-ended questions in this case? They always must call for a yes or no answer?

The Court: No, I'm not saying that. I'm saying that the question is too broad. Tr. 395–97.

Thereafter, the proceedings returned to open court and Gordon asked the following question of Venireman Christerson:

Mr. Gordon: Punishment is part of what we talk about when we talk about transgressions, be it against the moral law, God's law, man's law, or whatever. There are several different theories which we can't go into today about punishment, and what is punishment. Do you believe that one of the functions of punishment should be to rehabilitate a person?

Venireman Christerson: Well, yes, I think that when they have to get out, I think that they have to know the changes of society because everything keeps changing, you know where to fit in again.

Tr. 397–98.

Later, defendant's attorney asked Venirewoman Spears whether she could set aside her personal feelings about the death penalty if selected to be on the jury. Tr.

404. After the prosecution objected, a discussion was held outside the hearing of the jury. Defendant's counsel asserted that he believed the question was allowed under *Witherspoon* in order to attempt to rehabilitate a panel member. Tr. 406. Defense counsel was allowed to ask the question. Tr. 410.

Then a discussion occurred about whether defense counsel could inquire about various hypothetical circumstances to see if the panel member would consider the entire range of punishment.

Mr. Gordon: ... If I understand it correctly, the question put to the juror is if the proper set of circumstances arose, could you consider all the ranges of punishment including the death penalty, and that doesn't mean just this case. That's my understanding of it.

The Court: Well, that may be, but we're not going to be here and let you or the jurors dream up situations which are not this case, under which the death penalty could be assessed or could possibly be assessed. We never will get through the process if we're going to pick situations out of the air where that might be a possibility.

Tr. at 413.

The Court: I don't really care whether you are limited to this case or not, as long as your question is couched in such a way that they understand that whatever—at the conclusion of whatever case, under the Court's instructions, the issue of the death penalty, if that is a possibility, if they will consider it along with everything else.

Mr. Gordon: That's what I intend to do, [Y]our Honor, but I don't think I have to read verbatim out of any particular case.

The Court: I'm not saying you have to do that either.

Mr. Gordon: And I think just because the prosecutor has asked a question doesn't mean that I can't ask it again, either the same, or in different form.

The Court: Well, that's probably right, but at some point it may reach the place where it is repetitious, and if we get to that point, then I'll rule on it, and proba-

bly disallow further questioning as repetitious.

Mr. Gordon: I understand, [Y]our Honor. But, at least in this particular issue, which is so important, I think I have a right to ask the question over again, and in a slightly altered form.

The Court: That would be right.

Tr. at 416–17.

The Missouri Supreme Court considered Bannister's claim that the trial court unduly limited the scope of voir dire and found the following:

> Appellant objects to the limitation on defense counsel's use of open-ended questions. This limitation was reasonable, a proper exercise of the court's discretion in controlling the proceeding, and left the defense free to rephrase its questions.... The panel members were questioned on their ability to consider the full range of punishment, including the death penalty. There is no evidence of either an abuse of discretion or of injury to the defendant resulting from the court's rulings.

*State v. Bannister,* 680 S.W.2d 141, 145 (Mo. banc 1984).

The constitutional significance of voir dire was described in *Rosales–Lopez v. United States,* 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981) (citation omitted):

> Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled.... Similarly, lack of adequate voir dire impairs the defendant's right to exercise peremptory challenges where provided by statute or rule, as it is in the federal courts.

Specifically, a defendant in a capital case must be allowed to ask questions of prospective jurors about whether they are willing to consider all of the penalties provided by state law. *See Witherspoon v. Illinois,*

391 U.S. 510, 522 n. 21, 88 S.Ct. 1770, 1777 n. 21, 20 L.Ed.2d 776 (1968).

After an independent review of the record, I agree with the Missouri Supreme Court. In neither of the situations relied upon by Bannister did the trial court unreasonably restrict defense counsel in his examination of the panel. As the judge stated, his ruling on the prison question was only that the particular question was too broad. Whether the subject was religion or prison as a punishment option, counsel could have and did ask other questions to obtain information about the panel members' attitudes. The trial judge did not unreasonably restrict the questioning of prospective jurors about whether they would be able to impartially follow the court's instructions and evaluate the evidence. Defense counsel had a reasonable opportunity to examine the prospective jurors on whether they could consider all of the penalties provided by state law.

Accordingly, Bannister was not deprived of due process or his right to a fair and impartial jury by the two instances where the trial judge expressed concern about open-ended questions.

### Ground 10

*Bannister was not denied his right to due process and an impartial jury when the trial court refused to exclude Venireman Morris for cause*

■ Bannister moved to strike Venireman Morris for cause because he believed Morris exhibited a clear predisposition in favor of the death penalty as opposed to life imprisonment. Bannister argues that the trial judge erroneously failed to remove Venireman Morris for cause.

During voir dire, the prosecutor started to ask the panel if they knew any of the people who might be called as witnesses, but then the following occurred:

> [B]ut I'd like to ask first if any of you are aware that the maximum penalty, not necessarily the only penalty, but at least one of the penalties in a capital murder case could be death. You realize that?

Venireman Morris: Could I stop and ask a question there? It might sway my opinion on how I would vote if you were to find him guilty, and you didn't put him to death. What I'm saying is I don't want him put in a jail cell at my expense.

Tr. II at 350–51.

After this answer by Morris, the prosecutor returned to asking about possible witnesses.

Later during voir dire, Bannister's attorney moved to strike Morris from the panel for cause and the court denied the motion:

Mr. Gordon: Mr. R.E. Morris, Your Honor, he indicated that a dislike, I think, for people being put in jail at the taxpayers' expense, and I think that would make him biased and in favor of the death penalty automatically without respect to whether or not there are any other extenuating circumstances.

The Court: That will be refused.

Tr. II at 451.

Bannister asserts that Morris exposed a clear predisposition in favor of the death penalty over life imprisonment. Bannister contends that under *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), a juror must

be willing to consider mitigating factors in determining the appropriateness of life imprisonment as opposed to the death penalty. Because Venireman Morris was biased in favor of the death penalty without regard to mitigating circumstances and was unwilling to consider life imprisonment as an option, the trial court should have excused him for cause.

Petitioner's Traverse, Doc. 46 at 29–30. As a result of the trial judge's denial of the request to strike Morris for cause, Bannister argues that he was forced to exercise a peremptory challenge to remove Morris from the panel, thereby denying him the opportunity to freely exercise the full number of peremptory challenges to which he was entitled. Therefore, Bannister claims his rights to due process and an impartial jury were denied.

The impartial jury guaranteed by the Sixth Amendment consists of jurors "who will conscientiously apply the law and find the facts." *Wainwright v. Witt*, 469 U.S. at 423, 105 S.Ct. at 851–52. A prospective juror may not be excluded for cause because of his/her views about capital punishment unless those views " 'would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Id.* at 425, 105 S.Ct. at 852 (quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980)).

Because Bannister seeks habeas corpus relief pursuant to § 2254, I must "accord any findings of state courts on 'factual issues,' a 'presumption of correctness' under 28 U.S.C. § 2254(d)." *Wainwright*, 469 U.S. at 426, 105 S.Ct. at 853.

Last Term, in *Patton [v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) ], *supra*, we held that a trial judge's finding that a particular venireman was not biased and therefore was properly seated was a finding of fact subject to § 2254(d). We noted that the question whether a venireman is biased has traditionally been determined through *voir dire* culminating in a finding by the trial judge concerning the venireman's state of mind. We also noted that such a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province. Such determinations are entitled to deference even on direct review; "[t]he respect paid such findings in a habeas proceeding certainly should be no less."

*Id.* at 428, 105 S.Ct. at 854.

Excluding prospective jurors because of their views on capital punishment "is no different from excluding jurors for innumerable other reasons which result in bias." *Id.* at 429, 105 S.Ct. at 855. The trial judge's "predominant function in determining juror bias involves credibility findings...." *Id.* Credibility determinations rest largely on observation of demeanor, the peculiar province of the trial judge in this situation. *Patton v. Yount*, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984). "These are 'factual issues' that are subject to § 2254(d)."

*Wainwright v. Witt,* 469 U.S. at 429, 105 S.Ct. at 855.

Here, the trial judge's refusal to grant the motion to strike Morris was denied. Under the circumstances, it is fair to conclude that the trial judge's denial was based on a finding that Morris had not been shown to be biased. *Id.* at 429, 105 S.Ct. at 855. The finding of the trial judge is, therefore, " 'presumed correct' unless one of the enumerated reasons in § 2254(d) for avoiding the presumption is present." *Id.* at 431, 105 S.Ct. at 856. Bannister relies on § 2254(d)(8)—that the failure to find bias is "not fairly supported" by the record viewed "as a whole."

Morris volunteered his remark in the midst of the State's voir dire on other topics. Significantly, neither counsel examined Morris further about his views or whether his views would prevent him from following the court's instructions. Substantial doubt about whether Morris was doing anything other than showing off arises from Morris' failure to respond on either of the two occasions when the prosecutor asked all the prospective jurors whether they could follow the evidence in the case and all the instructions and give the defendant a fair and impartial trial, and a fair and impartial verdict. Tr. II at 360–62. Morris did not respond in the negative although some other venirepersons did respond negatively. *Id.* Furthermore, when asked in voir dire by defense counsel whether he thought that proof beyond a reasonable doubt was too strong a burden to ask of the State, Morris replied, "A man is innocent until proven guilty." Tr. II at 427–28. (This answer suggests that Morris did not mean to say that if prison were a possibility, it would influence his decision on whether Bannister was guilty or not guilty.)

Crucial to any determination about whether Morris was saying that he would not follow the court's instructions is Morris' demeanor when he asked the "question." Morris' comment might very well

have been intended to gain attention. Both counsel's failure to follow up and establish whether Morris would be unable to follow the court's instructions suggests that the comment was not taken seriously at the time.

"The question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are fairly supported by the record." *Id.* at 434, 105 S.Ct. at 857. Bannister has not presented clear and convincing evidence that the factual finding of the trial judge was not fairly supported by the record.

Because the trial court did not err when refusing to strike Venireman Morris for cause, Bannister was not deprived of his due process rights or his Sixth Amendment right to an impartial jury by having to exercise a peremptory challenge to remove Venireman Morris.

### Ground 13

*Bannister was not denied his right to due process and an impartial jury when the trial court excused Venireman Melton for cause*

■ Bannister argues that Venireman Melton was improperly excluded from the jury based on his reluctance to consider the death penalty. Bannister, therefore, contends that he was deprived of his rights to due process and an impartial jury.[1]

During voir dire examination, the following exchange occurred between defense counsel and Melton:

Mr. Gordon: Are you telling me you would not consider it [the death penalty]?

Venirem[a]n Melton: It would be against my conscience to do so.

Mr. Gordon: Well, I don't think I'm getting the answer. Would you consider it, yes or no, sir?

Venirem[a]n Melton: Would I consider the death penalty, no.

Mr. Gordon: Okay, do you think there are not [a] set of circumstances in which you would consider the death penalty?

---

1. Bannister raises further constitutional violations under Ground 13 of his Second Amended Habeas Petition but only discusses Venireman Melton in his Traverse. Any alleged violation not discussed in the Traverse is deemed abandoned.

Venireman Melton: You would have to give me a hypothetical situation. I don't know what you're getting at there.

Mr. Gordon: Well, we can't be involved in hypotheticals today. I've taken a lot of time as it is to talk to you folks, and we can't get into that. But are you saying that—

Venireman Melton: I'm not saying my mind is not bendable, but right now it's pretty well set.

Mr. Gordon: Well are you telling me that if the proper set of circumstances were set before you, and the judge instructed you to consider the range of punishment, the entire range, and part of that range was the death penalty, are you telling me it's possible that you would consider it?

Venireman Melton: I would consider it, but I would probably come up with the same answer.

Mr. Gordon: I'm not asking if you would invoke the death penalty, I'm asking if you would consider it as instructed by the judge.

Venireman Melton: I would consider it. Tr. II. at 530–31.

Later in the voir dire, the trial judge took up any challenges for cause.

The Court: Any challenges for cause?

Mr. Lentz: Kathryn Bennett.

The Court: She'll be excused.

Mr. Lentz: I'm not sure whether Mr. Melton answered the same question in two different ways or not. I think he answered the same thing differently, because I asked him directly under those circumstances if he would consider the death penalty, and he responded affirmatively, and when Ray asked him the same question and he said he would. If the Court would consider voir diring him on his attitude, that's the only other person I have a question about.

The Court: What do you say, Mr. Gordon?

Mr. Gordon: I think he said he could consider it, Judge. I think he's rehabilitated.

Mr. Lentz: Well, I don't want him struck for cause after his last answer, but I would like him voir dired by the Court as to what his position is. I don't know if he's rehabilitated or just answered the same question two different ways.

Mr. Gordon: I think he answered it pretty specifically, Judge. He said he could consider it. He said he could consider it in a proper case. He said it might turn out the same way, but that he could consider it.

The Court: Any others?

Mr. Lentz: Not for me, Judge.

Mr. Gordon: Judge, I don't think I have any.

(The following proceedings were returned to open court:)

The Court: Mr. Melton, I don't mean to pick on you, but the attorneys have both, I guess, picked on you a little bit, so let me ask you this question, which dealt with your feelings on the consideration of the death sentence along with other various possibilities. You were pretty clear when you indicated to the prosecuting attorney that you could not consider the death sentence as one of the alternatives under any circumstances, and then later on under questioning by Mr. Gordon, you indicated that you felt that you could consider that as one of the alternatives along with—

Venireman Melton: He asked if I would consider what you said, and I said I would consider it, but I didn't change the alternative.

The Court: Well, let me just put it to you this way, are there any circumstances under which you could feel that you could or could not vote for the death penalty, and I ask you maybe that— that's not clear. Under any circumstances, in the considering of all of the various options, could you vote for the death penalty?

Venireman Melton: Eternity is a long time, Judge, and as a pastor, I feel it would ruin my entire ministry if I would say yes. I can just pronounce what God has said, Thou shalt not judge, not only that, from my ministry, for the man himself, and I would hope that he had every opportunity for making it right before I would come along and say you are dead.

The Court: All right, you are an ordained minister?

Venireman Melton: Licensed minister.

The Court: And are you active and have a church?

Venireman Melton: Yes.

The Court:[2] All right, I'm going to at this time excuse Kathryn Bennett and Mr. Melton. You two are free to go at this time. I do thank you for coming, and you've helped us even though you've not been selected.

(The following proceedings were had out of the hearing of the jury panel:)

Mr. Gordon: Excuse me, [Y]our Honor, are you excusing Mr. Melton for cause?

The Court: I am excusing Mr. Melton. I know he's an ordained minister. I'll leave it open to you.

Mr. Gordon: I think I'm entitled to an answer, Judge. Are we excusing him for cause?

The Court: I'm excusing him for cause, but that includes also the fact he's an ordained minister.

Mr. Gordon: Thank you.

Tr. II at 571–75.

Bannister argues that Melton was "improperly excluded under the standards enunciated in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) and its progeny." Traverse at 35. As discussed in the previous point, the standard after *Wainwright* for determining whether to excuse a juror for cause based on his/her opinion about capital punishment is "whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Id.* 469 U.S. at 419, 424, 105 S.Ct. at 850, 852.

The trial judge's determination on juror bias is a factual conclusion accorded the "presumption of correctness" under 28 U.S.C. § 2254(d). *Wainwright v. Witt*, 469 U.S. at 429, 105 S.Ct. at 855.

Bannister argues that the trial court's determination of Venireman Melton's bias against the death penalty is not fairly sup-

ported by the record and, therefore, should not receive any deference under 28 U.S.C. § 2254(d)(8). Although conceding that much of Melton's testimony is ambiguous, Bannister focuses on what he characterizes as Melton's "unequivocal statement that he would consider the death penalty as instructed by the judge...." Bannister suggests that the trial judge's decision to exclude Melton "stands in stark contrast" to the judge's refusal to strike Morris.

Upon reviewing the record, the trial judge's determination of juror bias is fairly supported by the record. On the face of the record, Melton's responses are inconsistent. He said at one point that he would not consider the death penalty. Later, he somewhat equivocally said that he would consider it if asked to by the judge. Still later, Melton said that he would consider the death penalty "but [he] didn't change the alternative." Tr. II at 573. The trial judge could have taken this to mean that although Melton would consider the full range of punishment, he was predisposed against the death penalty. This conclusion is supported by Melton's statement that it would ruin his ministry if he said there were circumstances under which he could vote for the death penalty. Tr. II at 573. Thus, in light of all Melton's statements, the trial judge's decision to strike Melton for cause based upon juror bias was supported by the record.

Accordingly, Bannister's rights to due process and to an impartial jury were not abridged when the trial court excused Venireman Melton for cause.

### B. Ineffective Assistance of Counsel Claims

#### Ground 19

*Bannister was not denied his Sixth Amendment right to effective assistance of counsel by Gordon's decision not to investigate Bannister's psychiatric condition and was not denied due process when the trial court denied Bannister's motion for psychiatric examination*

. Bannister argues that he was denied his Sixth Amendment right to effective assis-

---

**2.** The transcript at 574 erroneously attributes these words to "Mr. Gordon."

tance of counsel because his counsel, Ray Gordon, failed to investigate his psychiatric condition and to present a mental defect defense. Bannister also argues that Gordon failed to investigate and present evidence of Bannister's psychiatric history during the penalty phase. Bannister further asserts that he was denied his right to due process when the trial court failed to grant his *pro se* motion for psychiatric examination.

### Standard of Review

The Sixth Amendment guarantees a criminal defendant effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). When a defendant fails to receive effective assistance of counsel, a "fundamental constitutional error" has taken place which "undermines the entire adversary process." *Pickens v. Lockhart,* 714 F.2d 1455, 1459 (8th Cir.1983) (citing *Thomas v. Wyrick,* 535 F.2d 407, 413 (8th Cir.), *cert. denied,* 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976)).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.
>
> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) (citations omitted).

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690, 104 S.Ct. at 2066. The habeas corpus petitioner bears a heavy burden in establishing that his counsel's assistance was not effective. *Pickens,* 714 F.2d at 1459.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of conviction has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

The proper standard for determining whether counsel's performance was deficient is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065. The court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* at 690, 104 S.Ct. at 2066.

Even if counsel's performance were deficient, the judgment should not be set aside "if the error had no effect on the judgment." *Id.* at 691, 104 S.Ct. at 2066. The defendant must "affirmatively prove prejudice," i.e., that the error or errors "actually had an adverse effect on the defense." *Id.* at 693, 104 S.Ct. at 2067. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.

*Id.* at 694, 104 S.Ct. at 2068.

Both the performance and prejudice components of the ineffectiveness inquiry present mixed questions of law and fact. *Id.* at 698, 104 S.Ct. at 2070. "[S]tate court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d)...." *Id.*

### 2. State Proceedings

At Bannister's arraignment on September 20, 1982, he entered a standard not guilty plea rather than a plea of not guilty by reason of mental disease or defect. Respondent's Exhibit F–2 at 1. Thereafter, neither defendant nor his attorney filed a notice of intent to rely on a defense of not guilty by reason of mental disease or defect.

On January 12, 1983, Bannister filed a *pro se* "Motion for Mental Examination" requesting an "order directing that defendant be examined for his competency to stand trial and to determine his responsibility for his actions at the time of the alleged offense." Respondent's Exhibit F–2 at 2. The only basis for the motion was Bannister's statement: "I think I need psychiatric help."

On January 18, 1983, the trial court held a hearing on pretrial motions including Bannister's *pro se* motion requesting a mental examination. Petitioner testified but spent most of the time talking about another motion. When asked by his attorney why Bannister wanted a mental examination, Bannister testified that he had "been losing sleep," "getting irritable," waking up "sometimes," losing his temper "quickly" and losing his "train of thought." In summary, he said, "I just don't feel right." Tr. I at 136. Bannister testified that neither he nor his family had a history of mental illness. *Id.* at 137. In response to some questions by the judge, Bannister testified that he had completed several years of college and had no attendance problems. Bannister also knew the day of the week and date. Tr. I at 143–44.

At the close of the hearing, the trial court made the following finding:

> With respect to his motion for a mental examination, Mr. Bannister has written the court, a copy of that letter has been read by his counsel. It will be made a part of the file. The letter is very well written. No confusions of thought or expression evidenced in the letter. Mr. Bannister, and that's for the court's inquiry, as to today is certainly oriented as far as time is concerned, the day of the week, the month, the year, and the day of the month. He's responded as to the number of siblings in his family, where he appears in that order. Certainly there is no indication evidenced to the court today that he is in anything other than good mental state of health. The motion

for examination for psychiatric examination is going to be overruled.

I hope he does, but I'm sure you could advise him, Mr. Gordon, if he desires to obtain a mental examination on his own, of course that's his privilege, his opportunity....

Tr. I. at 162–63.

In Bannister's first Rule 27.26 hearing, the trial court made these factual findings:

4. On August 23, 1982, public defender, Ray Gordon, was appointed to represent the movant in the case. Since being licensed as an attorney in 1966, Gordon has been employed as a defense attorney, prosecutor and magistrate judge. In addition, Gordon has participated in approximately twenty-four (24) criminal jury trials.

5. On September 9, 1982, attorney Gordon conducted the preliminary hearing.

6. On September 15, 1982, Gordon filed and served upon the state a request for discovery pursuant to Supreme Court Rule 25.03.

7. On October 13, 1982, state filed it's (sic) answer to defendant's request for discovery and Gordon received as discovery, voluminous documentary materials from the state.

8. Gordon conferred with movant on repeated occasions with regard to the case with movant aptly assisting his counsel in his defense and in preparation of trial.

9. On October 4, 1982, Gordon filed Motion to Suppress Statement of movant. Hearing was held on October 25, 1982 and on Novembe[r] 1 and 5, 1982, with movant testifying. Motion to Suppress was overruled.

10. On January 12, 1983, movant filed pro se Motion for Mental Examination with a hearing held on said Motion on January 18, 1983. That trial court conducted an interview of movant at said hearing and also observed movant at suppression hearing.

11. That movant testified ably at hearing on Motion to Suppress and at hearing on Motion for Mental examination, and movant was capable of articulating his thoughts and promoting his position and movant's responses to questions from the trial court revealed clear understanding of the proceedings.

12. That Gordon observed movant on numerous occasions and movant appeared normal with no evidence of any duress.

13. That Gordon did not have any evidence that movant was dominated by another person.

14. That no substantial or credible evidence has been offered by movant that Bannister was in fact mentally incompetent or insane.

Respondent's Exhibit F–1 at 27.

Based on these factual findings, the trial court rejected Bannister's contention that his attorney was ineffective for not requesting a mental examination and for not investigating Bannister's need for a mental evaluation:

In claim 8 of movant's First Amended Motion and in paragraph 8(b) of movant's *Pro Se* motion, movant attacked his attorney's effectiveness for failure to request/secure a mental examination and for failure to investigate movant's need for such an evaluation, and that court violated his constitutional rights by refusing to order a mental examination. Trial court is vested with broad discretion when ordering a mental examination. *State v. Beal,* 602 S.W.2d [at] 22 [Mo.App.1980] and Court had ample opportunity to examine and observe movant and did not err nor violate movant's constitutional rights.

Movant has failed to meet its burden here since counsel[,] based on observations and conference with defendant[,] had reached the conclusion that his client was capable of assisting him at trial and was not under duress, and appeared normal. *Garrett v. State,* 554 S.W.2d [at] 462 [Mo.App.1977].

Respondent's Exhibit F–1 at 30.

Furthermore, in *Bannister v. State,* 726 S.W.2d 821, 829–30 (Mo.App.), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987), the Court of Appeals made these additional findings:

While the defendant [was] in custody prior to trial, he was seen and examined by physicians on at least three occasions. There is no indication whatever that he showed any signs of mental disturbance. The only medicine prescribed for the defendant was an analgesic to relieve back pain he suffered from severe stab wounds in the back.

Shortly before trial, the defendant prepared and trial counsel filed a "Motion for Mental Examination." Defendant testified in support of his motion as follows:

Q. Would you tell the Court why you feel that it is necessary for you to be examined at this time?

A. I've been losing sleep. I'm getting irritable, and I wake sometimes and just—I just don't feel right.

. . . . .

Q. Have you ever had any history of mental illness?

A. No.

Q. Any history of it in your family that you know of?

A. No.

Q. Have you ever had a mental examination in the last ten years?

A. No.

. . . . .

At the close of the hearing on this motion, the trial court ruled the motion on its merits, observing that the defendant had written a letter concern[ing] his request for a mental examination. The court commented:

... Mr. Bannister ... as to today is certainly oriented as far as time is concerned, the day of the week, the month, the year, and the day of the month, certainly there is no indication evidenced to the Court today that he is in anything other than [a] good mental state of health. The motion for examination for psychiatric examination is going to be overruled.

The matter of defendant's mental state was brought up again at the post-conviction hearing. At that time, some reference was made to medical records, including mental evaluations, which could be obtained. Counsel was given time to obtain those records. They were not forthcoming. The post-conviction court finally concluded that the trial court had ample opportunity to observe the defendant on at least two occasions and there was no error in denying defendant's request for psychiatric examination. Having examined the record independently, we reach the conclusion that the defendant's sanity was never in fact at issue during the trial or at the sentencing phase.

An accused is not entitled to psychiatric evaluation solely as a precaution[ary] safeguard in the absence of evidence that he lacks capacity to proceed to trial. He is not entitled [to] psychiatric assistance in presenting his defense or in mitigating his punishment in the absence of a showing that his sanity is at issue in the case. There is therefore no merit in the assertion that the trial court denied the defendant due process. The redundant assertion that trial counsel was ineffective because he failed to investigate defendant's mental condition as a defense and as a mitigating circumstance is likewise without substance.

"Section 2254(d) by its terms, ... applies to factual determinations made by state courts, whether the court be a trial court or an appellate court." *Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). Furthermore,

[a]n ineffective assistance of counsel claim presents a mixed question of law and fact. *Eldridge v. Adkins,* 665 F.2d 228, 236 n. 5 (8th Cir.1981), *cert. denied,* 456 U.S. 910 [102 S.Ct. 1760, 72 L.Ed.2d 168] (1982). Therefore, the presumption of correctness accorded the factual determinations of the state court under 28 U.S.C. § 2254(d) ... applies only to the historical facts underlying the attorney's performance but not to the ultimate conclusion as to whether or not effective assistance has been rendered.

*Kellogg v. Scurr,* 741 F.2d 1099, 1101 (8th Cir.1984) (citations omitted).

Because Bannister has not established that one of the seven exceptions in § 2254(d) applies, or that the findings of the trial court, Rule 27.26 court, or appellate court are not fairly supported by the record, or that by convincing evidence these findings are erroneous, the state court's factual findings as set forth above are presumed correct. *See* 28 U.S.C. § 2254(d).

3. Expanding the Record

■ Bannister seeks to expand the record by filing affidavits pertaining to his psychiatric history and condition. Specifically, Bannister seeks to file the affidavits of Kerry Hough, Mary Morrissey, Alan Bannister, Linda Garland, Kathleen Dunbar, R.J. Gordon, Robin Bannister, Phyllis Call, Joseph Volpe and Alice Bannister. Petitioner also seeks in a second motion to expand the record to add the reports of Trooper Richards and Sheriff Abramovitz as well as Bannister's handwritten letter to the trial judge and Bannister's *pro se* motion requesting a psychiatric examination. Furthermore, Bannister seeks a psychiatric examination and the opportunity to take the deposition of Ray Gordon.

Respondent opposes Bannister's motions to expand the record and for additional discovery because Bannister had the opportunity to present this evidence at his Rule 27.26 proceeding but failed to do so.

I agree with respondent. To allow Bannister to expand the record and to pursue additional discovery at this point would undercut the state court's fact finding procedures and thereby circumvent the exhaustion requirement.

Bannister filed a Motion for Continuance of his first Rule 27.26 proceeding in order to allow his attorney to further investigate his psychiatric history. The Rule 27.26 court, however, suggested, without expressly finding, that Bannister's counsel had had sufficient time to investigate all matters and denied Bannister's Motion for Continuance. Although it denied Bannister's Motion for Continuance, the Rule 27.26 court stated:

I'm going to formally deny your motion for continuance. However, if you can [complete your investigation] within a week, I would suggest you go ahead and do it. Because if you can do it within a week and if you think—you've told me that you're operating in good faith and I certainly believe you when you say that—if you can do that in good faith and you do come up with something that you in good faith feel is significant, I have to dictate findings of fact and conclusions of law and I'm not going to get that done in a week. Because I'm going to give the attorneys an opportunity if they so desire, to submit some to me. So you're going to have over a week, although I'm denying your motion for continuance.... I would certainly reconsider if you in good faith could tell me you've got something, on the mental issue especially.

Respondent's Exhibit G at 51. Thus, the Rule 27.26 court provided Bannister with the *opportunity* (over one week) to investigate and submit additional evidence concerning petitioner's psychiatric history.

The Rule 27.26 court's docket sheet shows that petitioner did not file additional briefing or proposed findings of fact or law summarizing the results of any further investigation into petitioner's psychiatric history. *See* Respondent's Exhibit F–1 at 36. Thus, Bannister's counsel apparently did not avail himself of the opportunity to conduct further investigation or the investigation did not support Bannister's position.

The Rule 27.26 court's determination that Bannister's attorney had had sufficient time to investigate all matters concerning Bannister's psychiatric history is a finding of fact entitled to the § 2254(d) presumption of correctness. Because Bannister has not established that one of the seven exceptions in § 2254(d) applies or that the Rule 27.26 court's determination was not fairly supported by the record, or that, by convincing evidence, this finding was erroneous, I must presume that this factual finding is correct.

Accordingly, because Bannister had sufficient opportunity to expand the record in the state court proceedings but did not do so, he will not be permitted to expand the

record or seek further discovery in this court.

### 4. Merits of Ground 19

**a. Bannister was not denied effective assistance of counsel when his attorney chose not to further investigate Bannister's psychiatric condition**

■ According to the American Bar Association Standards for Criminal Justice:

It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.

1 ABA Standards for Criminal Justice, Standard 4–4.1 (2d ed. 1980) (quoted in *Pickens,* 714 F.2d at 1460).

In *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, the Supreme Court stated:

[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*See also Beans v. Black,* 757 F.2d 933, 936 (8th Cir.), *cert. denied,* 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed.2d 334 (1985). Even if counsel's investigation is inadequate under the circumstances, the habeas petitioner must meet "the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069.

Gordon's decision not to investigate Bannister's psychiatric history was reasonable given all the circumstances. As the state courts determined, Bannister had not pre-sented any factual basis for concluding that he suffered from mental disease or defect at the time of the murder or when he requested a psychiatric examination. Bannister stated at a pretrial hearing that he did not have a history of mental illness, no one in his family had a history of mental illness and that he had not had a mental examination in the last ten years.

The Rule 27.26 court stated that Gordon had observed Bannister on several occasions prior to trial and that Bannister appeared normal with no evidence of any duress or domination by another person. Furthermore, the Rule 27.26 court stated that Bannister had offered no substantial or credible evidence to establish that he was mentally incompetent or insane. Respondent's Exhibit F–1 at 27. The Missouri Court of Appeals, after independently examining the record, found that Bannister had made no showing that his sanity was an issue either during the trial or at the sentencing phase. *See Bannister v. State,* 726 S.W.2d 821, 829 (Mo.App.), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987).

In light of these presumptively correct state court findings, Gordon reasonably decided not to expend time investigating Bannister's mental condition when Bannister's mental condition did not reasonably appear to be an issue.

**b. Bannister was not denied his right to due process when the trial court denied his motion for psychiatric examination**

In support of his argument that his due process rights were violated when the trial court refused to grant his *pro se* motion for a psychiatric evaluation, Bannister relies on *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

In *Ake,* the United States Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation,

preparation and presentation of the defense." *Id.* at 83, 105 S.Ct. at 1096.

Based on the factual findings of the state trial court, Rule 27.26 court and appellate courts set forth at pp. 28–33, and after an independent review of the record, I conclude that at no time did Bannister make the showing required by *Ake* that his sanity at the time of the offense was to be a significant factor at trial. In fact, the only support Bannister provided to the trial court concerning his request for a mental examination was his statement in his motion, "I think I need psychiatric help," and his testimony in response to the court's inquiry about the basis of his request for a mental examination, "I've been losing sleep. I'm getting irritable and I wake sometimes and just—I just don't feel right." *See Bannister v. State,* 726 S.W.2d at 829–30; Respondent's Exhibit F-2 at 2. That Bannister experienced irritability, insomnia and general distraction is understandable considering that at the time, he was incarcerated, charged with murder and facing a potential death sentence.

Accordingly, Bannister's due process rights were not violated by the trial court's refusal to grant his motion for mental examination.

### Ground 18

*Bannister's claim that he was denied effective assistance of counsel by Gordon's failure to explain that a limiting instruction would be available regarding Bannister's prior convictions if Bannister chose to take the stand and testify during the liability phase is denied*

■ Bannister asserts that his trial attorney failed to explain to him that Missouri Approved Instruction–Criminal (2d) (MAI–Cr2d) 3.58 would be available to limit the jury's consideration of his prior convic-

tions.[3] Therefore, Bannister contends that his decision not to testify during the liability phase of the trial was uninformed and that Gordon's failure to explain the availability Of the limiting instruction constituted ineffective assistance of counsel.

Petitioner raised this claim in his first Rule 27.26 motion. Respondent's Exhibit F-1 at 16. The first Rule 27.26 court ruled: "Movant, in claim 7 of First Amended Motion, alleges ineffective counsel for attorney's failure to explain MAI–CR2d 3.58 and defendant's refusal to testify was unknowing, unintelligent and involuntary and as such made his decision uninformed. Movant produced no evidence to support this claim." Respondent's Exhibit F-1 at 30.

Petitioner did not appeal the Rule 27.26 trial court's ruling. *See* Respondent's Exhibit H-1. Petitioner was represented during the appeal of his first 27.26 motion by an attorney other than trial counsel.

Respondent argues that under Missouri law, petitioner's failure to appeal the Rule 27.26 court's ruling constitutes abandonment of the claim. Thus, because Bannister procedurally defaulted under state law, federal habeas review is barred absent a showing of "cause" and "prejudice."

Bannister argues that this ground is not procedurally barred. He contends that the determination of whether this claim is barred should be governed by the "deliberate by-pass" standard of *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Secondly, Bannister argues that any procedural default should be excused because this is a death penalty case. Lastly, Bannister argues that because issues pertaining to Gordon's effectiveness have been "exhaustively litigated" in state court, this court may review this claim on the merits without "insult to principles of federalism."

In *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977),

---

3. MAI–Cr2d 3.58 provides:

If you find and believe from the evidence that defendant was convicted of the offense of [specify the offense], you may consider that evidence for the sole purpose of deciding the believability of the defendant and the weight

to be given to his testimony and for no other purpose. You must not consider such previous conviction as any evidence that the defendant is guilty of any offense for which he is now on trial.

the Supreme Court held that to obtain federal habeas review of claims that have been defaulted under adequate and independent procedural rules, habeas petitioners must show "cause" for the procedural default and actual "prejudice" attributable thereto.

> In so holding, the Court explicitly rejected the standard described in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), under which a federal habeas court could refuse to review a defaulted claim only if 'an applicant ha[d] deliberately by-passed the orderly procedure of the state courts,' *id.* at 438, 83 S.Ct. at 849, by personal waiver of the claim amounting to 'an intentional relinquishment or abandonment of a known right or privilege....'
>
> At a minimum, then, *Wainwright v. Sykes* plainly implied that default of a constitutional claim by counsel pursuant to a trial strategy or tactical decision would, absent extraordinary circumstances, bind the habeas petitioner even if he had not personally waived that claim....

*Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986). "[C]ounsel's failure to raise a *particular* claim on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts." *Id.* at 492, 106 S.Ct. at 2647.

The Court also set forth a "fundamental miscarriage of justice" exception to the cause-and-prejudice requirement stating: "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." [However,] "[w]e remain confident that, for the most part, 'victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard.'" *Id.* at 495–96, 106 S.Ct. at 2649 (citing *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1982)).

The Court later stated:

> We reject the suggestion that the principles of *Wainwright v. Sykes* apply differently depending on the nature of the penalty a state imposes for the violation of its criminal laws. We similarly reject the suggestion that there is anything 'fundamentally unfair' about enforcing procedural default rules in cases devoid of any substantial claim that the alleged error undermined the accuracy of the guilt or sentencing determination. In view of the societal costs that attend the exercise of habeas jurisdiction, such exercise 'carries a serious burden of justification.' ... When the alleged error is unrelated to innocence, and when the defendant was represented by competent counsel, had a full and fair opportunity to press his claim in the state system, and yet failed to do so in violation of a legitimate rule of procedure, that burden has not been carried.

*Smith v. Murray,* 477 U.S. 527, 538–39, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986) (citations omitted).

In this case, an adequate and independent state procedural rule bars Bannister's claim concerning MAI–Cr2d 3.58. Under Missouri law, by not appealing claims decided by the trial court in a Rule 27.26 proceeding, the movant abandons them. *See Herron v. State,* 498 S.W.2d 530, 531 (Mo.1973); *Daly v. State,* 639 S.W.2d 211, 212 n. 1 (Mo.App.1982).

In Bannister's first Rule 27.26 motion, he claims that his counsel was ineffective because he failed to explain MAI–CR2d 3.58. The trial court denied this claim because: "Movant produced no evidence to support this claim. Court also notes utilization of MAI–Cr2d is one of trial strategy, and trial strategy should not be subject to second guess.... Claim is denied." Respondent's Exhibit F–1 at 30.

In the appeal from the trial court's ruling, Bannister did not explicitly raise his MAI–Cr2d 3.58 claim. *See Bannister v. State,* 726 S.W.2d 821, 830 (Mo.App.), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987); *see also* Respondent's Exhibit H–1; Appellant's Brief and Request for Oral Argument. Thus, under

*Herron* and *Daly,* Bannister abandoned this claim.

Bannister contends that the "deliberate by-pass" standard of *Fay v. Noia* "retains viability in certain situations" and should be applied in determining whether this claim is barred. Bannister relies on the "analysis" of the concurring and dissenting judges in *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Bannister's argument is without merit. The Court in *Wainwright* expressly and unequivocally overruled *Fay v. Noia* and the deliberate by-pass standard. Furthermore, Bannister never identifies the "analyses" in the concurring and dissenting opinions of *Murray* on which he relies.

Bannister's contention that *Wainwright* should not be applied in death penalty cases is also without merit. In *Smith,* 477 U.S. at 538–39, 106 S.Ct. at 2668, the Court expressly held that the cause-and-prejudice principle of *Wainwright* applies regardless of the nature of the penalty imposed. *See also Dugger v. Adams,* 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989) (applying *Wainwright* in death penalty case).

Bannister further argues that any procedural default should be excused because "issues pertaining to Gordon's effectiveness have been exhaustively litigated in state court" and, therefore, "no insult to principles of federalism would occur by review on the merits." Traverse at 68.

To the contrary, Bannister failed to pursue this claim through the state courts when he had an opportunity to do so. Therefore, he cannot raise the ground in this court.

Bannister has neither shown nor attempted to show "cause" and "prejudice" to excuse his default. Furthermore, Bannister has not demonstrated that Gordon's failure to explain the availability of MAI–Cr2d 3.58 probably resulted in a constitutional violation resulting in the conviction of an innocent man.

Bannister has failed to establish "cause" and "prejudice" required to overcome the procedural bar and has failed to show that

this is the kind of extraordinary case where the bar would be excused under the "fundamental miscarriage of justice" exception to the cause-and-prejudice standard. This claim will be denied.

### Ground 6

*Bannister's claims that he was denied due process by the trial court's failure to instruct the jury on the mitigating circumstance of acting under extreme duress or the domination of another, and that he was denied effective assistance of counsel by Gordon's failure to investigate and urge this defense will be denied*

Bannister asserts that his due process rights were violated when the trial court failed to instruct the jury during the penalty phase of the trial on the mitigating factor of acting under the domination of another. Bannister further argues that he was denied effective assistance of counsel because his attorney did not investigate and urge this defense.

A. Bannister's claim that he was denied due process when the trial court did not instruct the jury on the mitigating factor of acting under the domination of another is barred

■ Bannister claims that he was entitled to an instruction pursuant to Mo.Rev. Stat. § 565.012.3(5) 1978 (repealed effective October 1, 1984), which provides that it shall be a mitigating circumstance that "the defendant acted under extreme duress or under the substantial domination of another person." Bannister asserts that he was acting under the domination of Ronald Rick Wooten a/k/a "Indian."

Respondent contends that this claim is barred because Bannister did not request this instruction at trial or in his Motion for a New Trial.

Bannister argues that this claim is not barred because the Missouri Supreme Court reviewed it on its merits on direct appeal. Bannister further argues that if the court merely reviewed this claim under state law for "plain error" and not on its merits, plain error review is sufficient to

constitute a waiver by the State of its procedural rules.

In *State v. Bannister*, 680 S.W.2d 141, 149 (Mo. banc 1984), the Supreme Court held:

> Although not preserved for review, the Court finds no error in the alleged refusal to submit the statutory mitigating circumstance whether defendant acted under the substantial domination of another. In urging the Court to find plain error in the failure to submit the above mitigating circumstance, appellant cites evidence showing that 'Indian' was a mean person whom defendant feared. Other evidence showed that defendant expressed interest when offered the opportunity to make money by 'hitting' a man, and that defendant alone killed his victim while Indian remained miles away in Illinois. The evidence cited is insufficient to support the circumstance now urged.

The context of this statement in the opinion makes clear that if the court was reviewing this claim at all, it was only for "plain error."

Contrary to Bannister's argument, review for plain error on direct appeal does not cure any procedural default or constitute waiver of the State's procedural rules. *See Hayes v. Lockhart*, 766 F.2d 1247, 1252 (8th Cir.1985); *see also Puleio v. Vose*, 830 F.2d 1197, 1200 (1st Cir.1987). In *Puleio*, the court stated:

> It is not enough for [petitioner's] present purpose that some oblique consideration was given to the merits of his claim. Not every passing reference to substance dispels the onus of noncompliance with [an adequate and independent state procedural rule]. Waiver in such circumstances must entail the state court reaching the gist of the *federal constitutional question.*

Here, the Missouri Supreme Court never reached the "gist" of Bannister's present federal constitutional question. Furthermore, the court expressly, after referring to Bannister's failure to preserve this claim for review, stated that Bannister was urging "the court to find plain error...." No-

where did the Missouri Supreme Court state that it was engaging in anything other than plain error review. Thus, the record does not support Bannister's assertion that the court actually reviewed the claim on its merits despite its reference to plain error review. Moreover, Missouri procedure "requires that a constitutional attack be made at the first opportunity and preserved at each step of the judicial process." *Benson v. State*, 611 S.W.2d 538, 541 (Mo. App.1980). Bannister clearly failed to do this.

After reviewing the record, I find that Bannister did not raise this claim at trial (by requesting the instruction). Because the state court never refused to give the instruction, no basis exists for a claim of error. Furthermore, if Bannister claims that the judge should have given the instruction on his own motion, this claim was not raised in his Motion for New Trial or at any other stage of the state proceedings. Accordingly, Bannister never established a basis for a claim under applicable state procedures. This claim is procedurally defaulted. It cannot be reviewed by this court absent a showing of "cause and prejudice" or of a "fundamental miscarriage of justice."

Bannister argues "if procedural default did occur, cause and prejudice within the meaning of *Wainwright* excuses it." Traverse at 61. Bannister asserts that cause for his procedural default exists due to the ineffectiveness of his appellate counsel in failing to raise this issue on direct appeal.

The United States Supreme Court has articulated the requirements for successfully establishing "cause" based on the conduct of counsel:

> [T]he question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington, supra,* we discern no inequity in requiring him to bear the risk of attorney error that results in a

procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, see *Reed v. Ross,* 468 U.S. [1] at 16, 104 S.Ct. [2901] at 2910 [82 L.Ed.2d 1] or that 'some interference by officials,' *Brown v. Allen,* 344 U.S. 443, 486, 73 S.Ct. 397, 422, 97 L.Ed. 469 (1953), made compliance impracticable, would constitute cause under this standard.

Similarly, if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance.' *Cuyler v. Sullivan,* 446 U.S. 335, 355, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). Ineffective assistance of counsel, then, is cause for a procedural default. However, we think that the exhaustion doctrine, which is 'principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings,' *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. The question whether there is cause for a procedural default does not pose any occasion for applying the exhaustion doctrine when the federal habeas court can adjudicate the question of cause—a question of federal law—without deciding an independent and unexhausted constitutional claim on the merits. But if a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available. The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court 'to upset a state court conviction without an opportunity to the state court to correct a constitutional violation,' *Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950), and that holds true whether an ineffective assistance claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief.

*Murray v. Carrier,* 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986).

After reviewing the record, I find that Bannister never presented this ineffective assistance of appellate counsel claim to the state courts as an independent claim. Therefore, based on *Murray,* I cannot consider Bannister's claim of ineffective assistance of counsel as cause for his procedural default (or as an independent ground for habeas relief). Thus, Bannister has failed to establish cause to overcome the procedural default of this claim.

■ Bannister also fails to establish prejudice. To demonstrate actual prejudice:

The habeas petitioner must show 'not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' ... Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial.

*Id.* 477 U.S. at 488–89, 106 S.Ct. at 2649.

Bannister asserts that "prejudice occurred through the fact that review of petitioner's claims occurred under a higher scrutiny than would otherwise have been

the case." Traverse at 62. This explanation fails to demonstrate that the trial court's failure to instruct on the mitigating circumstance of substantial domination *actually* prejudiced Bannister by pervasively infecting his whole trial with constitutional error. Bannister has not shown that this alleged error made his trial fundamentally unfair. Thus, Bannister has also failed to demonstrate prejudice sufficient to overcome the procedural bar of the instant claim.

Accordingly, because this claim is procedurally barred, Bannister's request to expand the record and take Gordon's deposition in connection with this claim is denied.

B. Bannister's claim that he was denied effective assistance of counsel by Gordon's failure to investigate and urge the defense that Bannister was acting under extreme duress or the domination of another is barred

 Bannister asserts he was denied effective assistance of counsel when Gordon failed to investigate Bannister's relation to Wooten and failed to request an instruction that Bannister was acting under extreme duress or the substantial domination of another.

Bannister did not raise this ineffectiveness claim in his first Rule 27.26 motion. *See* Respondent's Exhibit F–1. Accordingly, Bannister is barred from raising it here. *See Wayne v. White*, 735 F.2d 324, 325 (8th Cir.1984). Furthermore, Bannister has neither shown nor attempted to show "cause" and "prejudice" necessary to overcome this procedural bar. *See Wainwright v. Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506. He also has not overcome the procedural bar by

demonstrating or attempting to demonstrate that this is the extraordinary case where a constitutional violation resulted in Bannister's conviction when he was actually innocent. *See Murray v. Carrier*, 477 U.S. at 496, 106 S.Ct. at 2649. Thus, Bannister's claim of ineffective assistance of counsel for Gordon's failure to investigate and urge the defense of duress or substantial domination is procedurally barred.

### *Ground 4*

*Bannister's claim that he was denied due process and his right to a fair trial and an impartial jury when the trial court admitted evidence of Bannister's previous parole is denied*

 Bannister contends that he was denied due process and his Sixth Amendment right to a fair trial when the trial court admitted State's Exhibit 57 during the penalty phase of his trial.

State's Exhibit 57 contains evidence of Bannister's prior criminal record.[4] Part of Exhibit 57 shows that Bannister pled guilty to a charge of burglary before an Illinois state court and was sentenced to three years imprisonment on November 27, 1979. The following page of the Exhibit is handwritten and states, "Discharged 8–17–81." Respondent's Exhibit B at 64–65.

Bannister contends that State's Exhibit 57 was objectionable because it revealed that he was paroled after serving less than two years of a sentence for burglary and that the jury was not entitled to consider that fact.

Respondent argues that this claim is barred due to Bannister's procedural de-

---

**4.** The trial court admitted State's Exhibit 57 during the penalty phase of Bannister's trial for the purpose of presenting evidence of "aggravating circumstances" which the jury must find to exist before it may recommend the death penalty. *See State v. Shaw*, 636 S.W.2d 667 (Mo. banc), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). Section 565.012, Mo. Rev.Stat. § 565.012 (1978) (repealed effective October 1, 1984), delineates the factors that the jury may consider as aggravating circumstances:

1. In all cases of capital murder for which the death penalty is authorized, the judge

shall consider, or he shall include in his instructions to the jury for it to consider:

1) any of the statutory aggravating circumstances enumerated in subsection 2 which may be supported by the evidence.

⋅ ⋅ ⋅ ⋅ ⋅

2. Statutory aggravating circumstances shall be limited to the following:

1) The offense was committed by a person with a prior record of conviction for capital murder, or the offense was committed by a person who has a substantial history of serious assaultive criminal convictions;

⋅ ⋅ ⋅ ⋅ ⋅

fault. Respondent asserts Bannister's default occurred when he both failed to object at trial to the admission of State's Exhibit 57 specifically on the ground that it included information concerning Bannister's parole and when he failed to present this claim in his Motion for New Trial. *See Jones v. State*, 784 S.W.2d 789, 793 (Mo. banc 1990) (failure to object constitutes procedural default); *Benson v. State*, 611 S.W.2d at 541.

Bannister contends this claim is not procedurally barred because he properly objected at trial to the admission of State's Exhibit 57. Alternatively, Bannister contends that federal habeas review of the instant claim is not procedurally barred because the Missouri Supreme Court reviewed this claim on the merits. He further argues, by incorporating arguments from Ground 6, that even if the Missouri Supreme Court reviewed this claim only under a plain error standard, plain error review is sufficient to constitute a waiver by the State of its procedural rules.

After reviewing the record, I find that Bannister's attorney did interpose an objection to the admission of State's Exhibit 57. *See* Respondent's Exhibit A at 65.[5] However, Bannister's counsel did not specifically base his objection to State's Exhibit 57 on the fact that it contained information regarding Bannister's *parole*. Counsel also never mentioned the handwritten note. Instead, Bannister's attorney made a general objection to introduction of the evidence concerning Bannister's two burglary convictions. Accordingly, any alleged error concerning notations regarding Bannister's parole was not brought to the trial judge's attention. The trial transcript shows that the trial judge overruled counsel's objection because evidence of Bannister's prior convictions and substantial assaultive behavior is admissible during the penalty phase of a capital murder trial. He did not discuss any error based on the *parole* information or the handwritten note presumably because Bannister's attorney did not direct his attention to it.

Furthermore, the record shows that Bannister did not present this claim in his Motion for a New Trial. *See* Respondent's Exhibit F-2 at 34–44. Bannister also did not include this claim in his Rule 27.26 motion. Thus, unless the Missouri Supreme Court's review of this claim can be construed as a waiver of state procedural rules, this claim is procedurally barred.

After reviewing the record, I find that counsel's objection was insufficient to preserve the current objection to State's Exhibit 57, i.e., that it referred to Bannister's *parole*. If Bannister's counsel meant to object on that basis at trial, he should have expressly stated this and thus given the trial court the opportunity to address that specific alleged error. Nothing in the record indicates that the trial judge under-

---

5. During the penalty phase of the trial, the following exchange occurred concerning admission of State's Exhibit 57:

Mr. Gordon: Judge, I'm looking at State's Exhibit No. 57, which the prosecutor will attempt to enter into evidence in the penalty phase of this trial. He's listed two aggravating circumstances, one that this was a murder for money, and the other is a history of assaultive behavior. What he's got listed in here is one indictment out of Peoria County, Illinois, Case No. 77CF21, which charges burglary of the residence of a[n] Emil Locher, L-o-c-h-e-r, Jr., and he lists another bill of indictment out of the Circuit Court of Peoria County, Illinois, in Case No. 79CF4637, charging a burglary on September 13, 1979, of a residence of Max Spears in Chillicothe, Illinois, and that's the ones that I object to, your Honor.

Mr. Lentz: Your Honor, I believe the state law allows at this phase in addition to convic- tions for substantial assaultive conduct, also allowed at this time to introduce records of any prior convictions at this phase of trial. Your Honor, that exhibit we've asked to have marked as State's Exhibit No. 57 is being offered in its entirety to conform with the sister state record law which includes records from the penitentiary, which I have a photograph of the defendant's fingerprint card, and then have several certified copies of convictions and imprisonment record. I believe it's necessary because I have to prove beyond a reasonable doubt to the jury that this is, in fact, the man that was convicted of those other crimes, and I think because of that burden in using the sister state record law, that we would be allowed to show all of those items as part of the official record of this defendant from another state.

The Court: Note his objection and I think I'll overrule it....

Respondent's Exhibit A at 65–67.

stood that the objection was based on the information in Exhibit 57 concerning Bannister's parole or the handwritten note.

In deciding Bannister's direct appeal, the Missouri Supreme Court stated:

> Appellant argues that the court erred in admitting evidence of prior convictions during the penalty phase of the trial. He did not object when the State introduced the evidence and failed to raise the issue in his Motion for New Trial. Review for plain error discloses no manifest injustice. Rule 30.20. Appellant analogizes to the situation where the court limits the evidence admissible when a defendant with prior convictions testifies in his own defense. Unlike the situation appellant described, here the court admitted the evidence in the penalty phase, during which the court has the discretion to admit evidence to assist the jury in determining punishment.

*State v. Bannister*, 680 S.W.2d 141, 146 (Mo. banc 1984).

Even if the claim referred to by the Missouri Supreme Court is the same claim advanced here, review for plain error on direct appeal does not cure procedural default or constitute a waiver of state procedural rules. *See Hayes v. Lockhart*, 766 F.2d at 1252; *Puleio*, 830 F.2d at 1200.

However, I do not believe that the Missouri Supreme Court was addressing the claim that Exhibit 57 was improperly admitted due to the information concerning Bannister's previous *parole*. "Point Relied On 2" of Bannister's appellate brief stated:

> The trial court erred in admitting into evidence and allowing the jury to peruse state's Exhibit No. 57 relating to defendant's prior convictions as that exhibit contained specific detailed information concerning such offenses and defendant's imprisonment so as to inflame the passion and prejudice of the jury and improperly cause the jury to favor the death penalty.

**6.** In his Traverse Bannister includes a separate subsection entitled "Ineffectiveness of Gordon." *See* Petitioner's Traverse, Doc. 46 at 78–80. If Bannister intends this subsection to present either a separate ground for relief or "cause", the record shows that this claim has never been

Respondent's Exhibit C–1 at 14. Bannister's Point Relied On 2 cannot reasonably be construed to assert error concerning the information in the exhibit regarding Bannister's *parole*.

Accordingly, the procedural default may be overcome only by a showing of "cause" and "prejudice." *See Wainwright v. Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506. Bannister has not attempted to make this showing. In addition, Bannister has made no attempt to demonstrate that the "fundamental miscarriage of justice" exception to the cause-and-prejudice standard is applicable. *See Murray v. Carrier*, 477 U.S. at 495, 106 S.Ct. at 2649. Therefore, this claim is procedurally barred.[6]

Because this claim will be denied, all discovery requested in connection with it is denied.

### Ground 15

*Bannister was not denied his right to due process by the manner in which the trial court answered a question from the jury concerning eligibility for parole; Bannister was not denied effective assistance of counsel by Gordon's failure to object to the comment*

■ Bannister argues that the trial judge made an improper comment to the jury when the jury asked a question concerning eligibility for parole. Bannister further argues that his counsel was ineffective because he failed to object to the comment.

The exchange out of which the allegedly objectionable comment arose is as follows:

> The Court: The jury has a question. I've asked that they be brought back in to ask their question. I understand you have a question. I may not be permitted to answer it under the law, but state your question and I will answer it.

raised in state court and, therefore, is barred from review here absent a showing of "cause" and "prejudice." *See Murray v. Carrier*, 477 U.S. at 488–89, 106 S.Ct. at 2645–46. No such showing has been made.

The Foreman: Your Honor, there is a point of law that has come up that we would like your opinion on. It's the way it reads, that it would, the life imprisonment would be for fifty years without the possibilities of parole. Is this true, or does it come up for review every ten years, or five years, or seven years?

The Court: The law is stated in the instructions, and that's the way it is. That's the law.

The Foreman: There's no way that he would be eligible for parole?

The Court: Under the laws that exist, there is none now.

The Foreman: And there wouldn't be any chance of review?

The Court: I don't think I, under the law, should or can answer that question. I think you'll need to rely on those instructions which do fully state the law.

The Foreman: All right, thank you, Your Honor.

Tr. V. at 198–99.

Bannister argues that when the court stated, "[u]nder the laws that exist, there is none now," the court left an improper and prejudicial impression on the jury that the Missouri legislature might modify the law so that Bannister would become eligible for parole. Thus, according to Bannister, the jury was more likely to impose the death penalty rather than a 50 year mandatory sentence.

### A. Bannister was not denied his right to due process by the trial court's statement

In *Bannister v. State*, 726 S.W.2d 821, 827 (Mo.App.1987), found, the Missouri Court of Appeals found: "Taken as a whole, the dialogue merely referred the jury to the court's instructions. The record itself shows those instructions were followed.... Considering the evidence received at the sentencing hearing, the instruction leaving imposition of the death penalty to the jury and the jury's plain statement of its reasons for assessing the death penalty, we conclude the jury was not misled by and did not consider the trial court's comment." The Missouri Court of Appeals' factual finding is entitled to the § 2254(d) "presumption of correctness" unless any of the enumerated exceptions apply. *Sumner v. Mata*, 449 U.S. at 548, 101 S.Ct. at 769.

Bannister argues that the presumption of correctness should not attach to these findings under § 2254(d)(3) and § 2254(d)(8). In raising these exceptions to the presumption of correctness, Bannister contends that "material facts were not adequately developed at the state court hearing" and that this finding is "not fairly supported by the record."

Bannister asserts that the material fact that was not adequately developed at the state court hearing is contained in the affidavit of Ray Gordon. Bannister asserts that Gordon states in his affidavit that "two jurors have actually stated that they would have 'held out' for life imprisonment had they been instructed that there was, indeed, no chance for parole." Traverse at 82. Although Gordon's affidavit is not currently part of the record, petitioner seeks to have it added to the record.

Respondent argues that Gordon's affidavit should not be considered because it constitutes impeachment of the verdict which is prohibited under Rule 606(b), Federal Rules of Evidence.[7]

Rule 606(b), Federal Rules of Evidence, states:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, ex-

---

**7.** Respondent argues that Rule 606(b), a federal evidentiary rule, bars this court's consideration of Gordon's affidavit. However, it is unclear whether federal or state law regarding jurors' impeachment of their verdict governs in this federal § 2254 action. Fortunately, it is unnecessary to determine which body of law governs because, as will be explained, Missouri and federal law are the same on this point.

cept that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

In *Poches v. J.J. Newberry Co.*, 549 F.2d 1166, 1169 (8th Cir.1977), the Eighth Circuit Court of Appeals stated: "[W]e recently held in *United States v. Eagle*, 539 F.2d 1166, 1169–71 (8th Cir.1976), that the verdict of a jury may not be impeached by evidence of the thought processes and undisclosed subjective prejudices of individual jurors who concurred in the verdict." *See also* 27 C. Wright & V. Gold, *Federal Practice and Procedure* § 6074 (1990) ("Rule 606(b) precludes testimony that the jury misunderstood instructions.").

After reviewing the record and Gordon's affidavit, I find that the jurors' statements related in Gordon's affidavit meet the three components of Rule 606(b) and thus fit within the prohibition of that rule. First, the jurors' statements involve an "inquiry into the validity of a verdict." Second, the impeaching statements are presented via affidavit, a form covered by the rule. Third, the jurors' statements concern the effect of the trial court's instruction as modified by his comment on the jurors' minds or emotions so as to influence their assent or dissent from the verdict. The statements also address the jurors' mental processes in reaching their verdict.

Missouri law is very much the same as Rule 606(b). In *Black v. Cowan Construction Co.*, 738 S.W.2d 617, 620 (Mo.App. 1987) (citations omitted), the court stated:

[Plaintiff] is apparently attempting to impeach the verdict of the jury based on comments of two jurors made after the verdict was returned. The long established rule in Missouri is that testimony of a juror is inadmissible and is not to be received in evidence for the purpose of impeaching the verdict of a jury.... No

juror is competent to impeach a verdict by testifying as to matters inherent in a verdict such as whether a juror or jurors did not understand the law as contained in a court's instruction....

After again reviewing the record and Gordon's affidavit, I will not consider the jurors' statements presented in Gordon's affidavit because the jurors' statements concern matters "inherent to the verdict." Thus, pursuant to Federal Rule of Evidence 606(b) and similar Missouri evidentiary rules, Gordon's affidavit will not be made part of the record and will not be considered in determining whether the presumption of correctness given state court findings has been overcome.

Because Bannister presents only Gordon's affidavit to support his claim that "material facts were not adequately developed at the state court hearing," this reason for not according the state court findings a presumption of correctness fails.

Bannister has also failed to establish that the findings of the Missouri Court of Appeals are "not fairly supported by the record." After an independent review of the record, I find that the Missouri Court of Appeals' findings on this issue are fairly supported by the record.

 Furthermore, based on my independent review of the record, I find that the jury could not reasonably have interpreted the trial judge's statement as an indication that the Missouri legislature would change the law determining Bannister's eligibility for parole. The trial judge properly stressed to the jury that they were to "rely on those instructions which do fully state the law." Furthermore, the trial judge's comments did not approach the kind of impermissible statements found to create constitutional violations in *Newlon v. Armontrout*, 693 F.Supp. 799 (W.D.Mo.1988), *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), or *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)—cases cited by Bannister in support of his

position.[8]

In light of the presumptively correct findings of the Missouri Court of Appeals on this issue and based on my own independent review, I find that Bannister's right to due process was not violated by the trial judge's comment.

B. Bannister was not denied effective assistance of counsel by Gordon's failure to object to the trial judge's statement

Bannister argues that Gordon's failure to move for a mistrial at the time of the trial judge's comment constitutes ineffective assistance of counsel. In light of my adoption of the state appellate court's finding that "the jury was not misled by and did not consider the trial court's comment," and my independent finding that the jury could not reasonably have interpreted the trial judge's comment as indicating the Missouri legislature would change the parole statutes, and because the comment was not unfairly prejudicial or even improper if it was so interpreted and considered by the jury, Bannister cannot establish that Gordon's failure to object to the comment was unreasonable as required by *Strickland.* Also, based on these same factors, Bannister cannot establish that there is a "reasonable probability" that Gordon's failure to object resulted in actual prejudice to Bannister.[9]

Accordingly, because Bannister has not demonstrated that Gordon's conduct was unreasonable or that he was prejudiced by that conduct, he has not established that his right to effective counsel was violated.

*Ground 7*

*Bannister was not denied his right to due process when the trial court refused to exclude statements by the prosecutor in opening statement referring "to an unrelated accident causing serious injury to another and involving [Bannister]"*

Bannister claims that his due process rights were violated when the trial court failed to sustain Gordon's objection to some of the prosecutor's remarks in opening statement. Bannister contends that the challenged statements violated his due process rights because the underlying evidence to which the prosecutor referred was inadmissible. Alternatively, Bannister argues that the prosecutor mischaracterized the evidence and that his statements were "clearly calculated and intended to persuade the jury that [Bannister] was responsible for a nearly fatal assault on one man, Glenn Miller, and should, therefore, be convicted of murdering another man, Darrell Ruestmann." Traverse at 88. Bannister contends that the statements "may have

8. Moreover, there is authority that the trial judge's comment was not improper even if the jury construed it as an indication that the Missouri legislature might modify parole statutes. In *Gilmore v. Armontrout,* 861 F.2d 1061, 1067 n. 2 (8th Cir.1988), *aff'd,* 867 F.2d 1179 (8th Cir.1989) (en banc), the Eighth Circuit Court of Appeals stated: "[N]or do we believe that Missouri case law prohibits a capital sentencing jury from considering ... the power of the state legislature to modify parole statutes." In support of its decision, the court relied on *State v. Newlon,* 627 S.W.2d 606, 618–19 (Mo.) (en banc), *cert. denied,* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982), wherein the court rejected various claims challenging a prosecuting attorney's closing argument that included statements that a sentence to a term of years could be modified by the legislature to permit the defendant's parole. The court also relied on *State v. Antwine,* 743 S.W.2d 51, 71 (Mo.1987) (en banc), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), in which the Mis-

souri Supreme Court recognized that during the punishment phase of a death penalty case, the jury may consider evidence and argument that would be inadmissible in the guilt phase, including argument concerning the need to impose the death penalty to prevent the defendant from committing future crimes. Thus, the trial judge's comment did not violate due process because Missouri law allows the jury to consider the possibility that the legislature may change parole statutes in defendant's favor.

9. Bannister again argues based on Gordon's affidavit that two jurors indicated that absent the possibility of parole, they would have "held out" for a life sentence. This argument fails because Gordon's affidavit will not be made part of the record and will not be considered by me with regard to this claim. *See, supra,* at 544. Because the information presented in Gordon's affidavit is the only evidence presented by Bannister to establish prejudice under *Strickland,* Bannister has not demonstrated prejudice.

led the jury to believe that Bannister killed Miller." *Id.*

Respondent argues that Bannister's due process rights were not violated because the challenged statements were based on relevant and admissible evidence. Respondent also argues that the prosecutor did not mischaracterize the evidence because the jury could not reasonably have concluded, based on the entirety of the prosecutor's opening statement and the evidence as a whole, that Bannister assaulted Glenn Miller or caused his death.

The statements to which Bannister objects are:

> Mr. Lentz: Here's Hays and Doerge and they're driving north; and there's Sowersby and he's driving south. Hays and Doerge see these two guys, they are walking south on top of this bridge and they are going along pretty good, they are not staggering, they are walking. Well, they've got a description of Glenn Miller; five six, goatee, short guy. One of them looks like him. So, Hays and Doerge have got to drive on off the bridge, they go down to a parking lot, turn back around and go back up. There is one guy on the bridge; the defendant, sitting over here in the blue shirt. They ask the defendant, "Where's the other guy?" and he says, "He went on to the Ramada, walked on to the Ramada Inn," which is south of that bridge. They ask the defendant if he's got any I.D. on him and where he is staying. He shows them a motel key, Range Line Motel, and the room number was noted by Deputy Hays. Hays and Doerge haven't got a

> description of the fellow running from the trailer, so they let him go. This is about three o'clock.
>
> Well, about 3:00 or 4:00 in the morning, Glenn Miller shows up. He's laying on the railroad tracks under the bridge, he's been hit by a train. Word is relayed around, and Hays and Doerge and the other officers get together and they think this over and start adding up. So, they go back to that motel room, the one that the defendant showed them the key from. The key has got a room number stamped on it in some form. They go back to that motel room. There's nobody there; the clothes are gone; crushed cigarette packages; empty peanut butter jar with a spoon stuck in it and some bread laying there. No defendant. The police think, "We better check the bus station." Two Joplin officers, now with a description, go to the bus station where there he is, the defendant, with his round trip bus ticket at the Trailways Bus Station. The 408 Cab Company picked him up about 4:30 in the morning at the Range Line Motel and drove him down there, with a green knapsack. The defendant is arrested and detained by the two Joplin officers. The Newton County officers get there, he is charged with capital murder that day.

Tr. III at 18–20.[10]

The Missouri Supreme Court made the following factual findings concerning the bridge incident involving Glenn Miller:

> The evidence showed that Miller visited the defendant in his motel room after the murder. Miller was drunk, and defen-

---

10. Bannister's trial attorney, Gordon, timely objected during the prosecutor's opening statement to any discussion of the "incident that occurred on the bridge:"

> Mr. Gordon: If it please the Court, I'm going to object, and I would like to approach the bench, please. [Counsel approached the bench and the following proceedings were had:]
> Mr. Gordon: Judge, I believe that the prosecutor is going to talk about Glenn Miller and an incident that occurred on that bridge that happened to Glenn Miller, which has absolutely nothing to do with this case. I believe that any testimony about this incident would not be admissible, that if it were entered, it

> would be highly prejudicial and inflammatory. It involves an accident which happened to Glenn Miller. It's not part of this case and I would ask the Court as I believe that evidence is not admissible that the prosecutor not be allowed to go into that on his opening statement.
> Mr. Lentz: Judge, Glenn Miller was the person that was at the trailer park earlier. The defendant was with Glenn Miller on that bridge. I think we're entitled to talk about that. We're entitled to let the jury know where Glenn Miller was, he was sitting there at the trailer park earlier.
> The Court: Overruled.
> Tr. III at 17–18.

dant offered to escort him back to the trailer court. When the two men stopped to rest on a viaduct over some railroad tracks, Miller straddled the bridge railing, lost his balance and fell to the tracks below. Defendant, believing Miller to be dead, started back toward his motel. On his return defendant encountered two deputy sheriffs who had previously seen the two men approach the viaduct and who were looking for Miller and another unidentified subject in connection with the Ruestman murder. In response to their questions, defendant said his companion had gone to the Ramada, that he was returning to his motel, and that he did not know of any trailer parks in the area. The deputies left and defendant returned to his motel.

*State v. Bannister,* 680 S.W.2d 141, 146 (Mo. banc 1984). These findings are presumed correct under § 2254(d), absent any showing that one of the enumerated exceptions applies. Bannister makes no such showing.

The court held that this evidence, which underlies the prosecutor's remarks in opening statement, was "admissible to complete the account of the murder presented by the State ... and to corroborate the confession of defendant." *Id.* at 147 (citations omitted).

The Missouri Supreme Court's ruling that the evidence underlying the prosecutor's remarks is admissible involves a matter of state substantive law. The United States Supreme Court held in *Wainwright v. Sykes,* 433 U.S. at 81, 97 S.Ct. at 2503–04, that "a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts.... The application of this principle in the context of a federal habeas proceeding has therefore excluded from consideration any questions of state *substantive* law, and thus effectively barred federal habeas review...." *See also Pierce v. Parratt,* 666 F.2d 1205, 1207 (8th Cir.1983). Thus, the Missouri Supreme Court's decision concerning the admissibility of the underlying evidence is barred from habeas review in this court.

Petitioner cannot base a due process challenge on prosecutorial comments made in opening statement when the comments refer to relevant and admissible evidence. *See United States v. Wagoner,* 713 F.2d 1371, 1376 (8th Cir.1983); *United States v. Haldeman,* 559 F.2d 31, 90–91 (D.C.Cir. 1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

Thus, because the state court held that the evidence underlying the challenged statements was admissible and because that decision is not reviewable here, Bannister's claim that the prosecutor's opening statement violated his due process rights fails.

 Therefore, the only question that remains is whether the prosecutor, in his opening statement, mischaracterized the evidence so as to "so infect [Bannister's] trial with unfairness as to make the resulting conviction a denial of due process."

Bannister contends that the prosecutor's statements about Miller were intended to encourage the jury to infer that Bannister had killed Miller by pushing him off the viaduct and that Bannister's subsequent statements to the police were made in an attempt to cover up the "murder" of Miller. Bannister argues that the prosecutor created this inference by failing to mention that Miller's fall had been accidental and that Miller was still alive.

Having reviewed the complete text of the prosecutor's opening statement, I find neither that the prosecutor mischaracterized the evidence nor that a reasonable juror would infer from the prosecutor's comments that Bannister killed Miller. Furthermore, Bannister presents no evidence and none is found in the record showing that the prosecutor intended that the jury draw the inference that Bannister argues was created by the prosecutor's statements. The prosecutor seemed only to be explaining the process by which the police officers, Hays and Doerge, came to realize that Bannister might be involved in the murder of Reustman. Moreover, since evidence at trial established that Miller's fall was accidental and that Miller was still alive, even had the prosecutor mischarac-

terized the evidence, the trial court's failure to exclude such comments would not have so infected the trial with unfairness as to make the resulting conviction a denial of due process. Bannister could not have been prejudiced by any alleged mischaracterization because evidence presented to the jury refuted any possible inference that Bannister had anything to do with Miller's injuries.

Accordingly, Bannister was not denied his right to due process when the trial court failed to sustain the objection to the prosecutor's comments concerning the Miller incident.

## Ground 2

*Bannister's claim that he was denied due process during his appeal under Missouri Supreme Court Rule 27.26 is not subject to federal habeas review*

█ Bannister argues that he was denied due process when the Rule 27.26 court refused to grant a continuance so that his appellate counsel could secure his existing psychiatric records.

Respondent contends that Bannister cannot raise a claim of defect in state post-conviction proceedings as an independent ground for habeas corpus relief. Respondent bases his argument on *Mitchell v. Wyrick*, 727 F.2d 773, 774 (8th Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984), where the Eighth Circuit Court of Appeals held:

Habeas corpus is available to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.' 28 U.S.C. § 2254(a). Thus, § 2254 gives federal courts jurisdiction to determine the constitutionality of a state criminal conviction, but does not authorize review of state postconviction relief proceedings. 'Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on a proceeding collateral to detention of appellant and not on the detention itself....' *Williams v. Missouri*, 640

F.2d 140, 144 (8th Cir.), *cert. denied*, 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981).

*See also Williams v. Lockhart*, 849 F.2d 1134, 1139 (8th Cir.1988); *Williams v. Missouri*, 640 F.2d 140, 143–44 (8th Cir.1981) ("Errors or defects in the state post-conviction proceeding do not, *ipso facto*, render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings.").

Bannister claims that the Eighth Circuit's reasoning in these cases is flawed and that this court should reject that line of cases and adopt the reasoning in *Dickerson v. Walsh*, 750 F.2d 150 (1st Cir.1984). Bannister cites *Dickerson* for the proposition that an attack on post-conviction relief may properly be raised in a federal habeas corpus proceeding.

A federal district court is not free to reject or ignore the rule of law prevailing in the Circuit in which it is located. *See Drake v. Scott*, 812 F.2d 395, 400 (8th Cir.1987); *Fisher v. Trickey*, 656 F.Supp. 797, 807 (W.D.Mo.1987). The Eighth Circuit Court of Appeals recently and clearly reaffirmed its position that "'[e]rrors or defects in the state post-conviction proceeding do not, *ipso facto*, render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings.'" *Smith v. Lockhart*, 882 F.2d 331, 334 (8th Cir.1989). I will not ignore this Circuit's rules and adopt rules from other Circuits.

Accordingly, based on *Mitchell*, *Williams* and *Smith*, Bannister's claim that he was denied due process when the Rule 27.26 trial court refused to grant a continuance is not subject to review in this habeas action.

## Ground 9

*Bannister was not denied his right to counsel, right against self-incrimination and right to due process when the trial court admitted evidence of Bannister's incriminating statements to the police*

Bannister asserts that shortly after his arrest on the morning of August 22, 1982,

he requested an attorney and medical attention, neither of which were provided until after he had made certain incriminating statements to the police. Bannister argues that the admission of those statements constituted "a clear violation of [his] Fifth Amendment protection against compelled self-incrimination, *e.g., Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), his Sixth Amendment right to the assistance of counsel, *e.g., Escobedo v. Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] (1964), and his due process right to a fair trial, *e.g., Blackburn v. Alabama,* 361 U.S. 199 [80 S.Ct. 274, 4 L.Ed.2d 242] (1960)." Traverse at 102.

The Missouri Supreme Court determined that the incriminating statements at issue were admissible because defendant voluntarily gave his statements to the police after receiving full *Miranda* warnings. In doing so, the court made the following factual findings:

Arresting officers twice advised defendant of his *Miranda* rights and made no attempt to question him. At 5:40 a.m. on August 22, at the Joplin City Jail, defendant again received *Miranda* warnings. At that time, he refused to sign a waiver form, indicating his desire to wait for an attorney. The questioning ceased. Later, defendant volunteered certain information to officers, including the alias he used at the motel. En route to the Newton County Jail, defendant inquired as to the possible punishment for capital murder, expressed regret that he left his "own profession" of "robbing banks" at which he "never got caught," and speculated about FBI involvement in the current investigation. At 6:30 a.m., following his arrival at the [Newton County] jail, defendant asked to see the person in charge. Officers took defendant to the sheriff, who declined to talk with defendant, but invited him to make a telephone call and advised him to tell the truth. Defendant initiated each of these contacts without prompting by police officers.

At 10:30 a.m. on August 23, defendant met with the sheriff and two officers, at which time they advised him of his *Miranda* rights. Defendant stated that he understood his rights and wanted to talk, and signed a written waiver. During the conversations that followed, defendant recounted numerous details of the crime. At defendant's suggestions, he accompanied officers to the scene of the murder, where he continued his commentary on the events prior to and immediately following the shooting. During this time, officers reminded defendant that he did not have to cooperate, but he responded that he wanted to talk. Upon their return to the sheriff's office, officers permitted defendant telephone calls and again read him his *Miranda* rights. Defendant then gave officers an account of the crime from its inception to defendant's arrest. Although defendant initially used the third person in describing the events and never specifically stated that he shot Ruestman, the extent and detail of the information he provided leaves little doubt of his guilt. Other than mention of occasional pain from a past injury, defendant did not appear to be in pain during questioning, did not request immediate medical care or move to halt the interview, and there is no evidence of physical or psychological coercion.

A request for counsel bars further interrogation until an attorney is present, unless the accused in the interim voluntarily initiates discussion. *Edwards v. Arizona,* 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1884–1885, 68 L.Ed.2d 378 (1981). When defendant requested an attorney, officers stopped the interrogation. The second interview with police followed more than a day later, during which time defendant expressed a desire to talk, and began only after officers repeated the *Miranda* warnings and received an indication that defendant understood his rights and wished to talk. Defendant's repeated expressions of willingness to talk in the absence of counsel, his volunteered statements to officers about the shooting, his response that he understood his rights, as well as his action in signing the waiver form, show a valid

waiver. This establishes that the law enforcement officers respected defendant's right to have counsel present during interrogation; he himself initiated further discussions, then knowingly and intelligently relinquished his rights and voluntarily gave a statement. *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); *State v. Boggs*, 634 S.W.2d 447 (Mo. banc 1982).

*State v. Bannister*, 680 S.W.2d at 147.[11]

Respondent argues that these state court findings are presumed correct under § 2254(d). Citing *Williams v. Brewer*, 509 F.2d 227, 231–32 (8th Cir.1974), *aff'd*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), Bannister argues that the issue of whether he waived his *Miranda* rights is a mixed question of fact and law and that, therefore, the state court findings are not subject to the § 2254(d) presumption. Relying on *Mendenhall v. Hopper*, 453 F.Supp. 977, 982–83 (D.Ga.1978), *aff'd*, 591 F.2d 1342 (5th Cir.1979), Bannister further argues that where the right allegedly waived is a federal right, as it is in this case, the issue of waiver is a federal question and any state court determination is not binding on a federal habeas court.

In *Miller v. Fenton*, 474 U.S. 104, 117, 106 S.Ct. 445, 453, 88 L.Ed.2d 405 (1985), the United States Supreme Court held that a federal court must defer to a state court's factual findings regarding the issue of waiver of *Miranda* rights:

> [In the confession context], ... questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings, often require the resolution of conflicting testimony of police and defendant. The law therefore is clear that state court findings on such matters are conclusive on the habeas court if fairly supported in the record and if the other circumstances enumerated in § 2254(d) are inapplicable.

The court concluded that although § 2254(d) requires deference to state-court findings on factual issues, the ultimate decision on whether evidence of a confession was properly admitted into evidence is for the federal court. *Id.* at 115, 106 S.Ct. at 452. "[W]e think that it would be inappropriate to abandon the Court's longstanding position that the ultimate question of the admissibility of a confession merits treatment as a legal inquiry requiring plenary federal review." *Id.*

In *Williams v. Brewer*, 509 F.2d at 231–32, the Eighth Circuit Court of Appeals held that the question of whether a criminal defendant voluntarily waived his *Miranda* rights is a mixed question of fact and law.

> In this case, the issue of whether appellee waived his right to counsel can best be characterized as an 'ultimate fact' or as a 'conclusion of fact.' The appellation of 'fact' or 'law' is nevertheless not determinative here. The significant element in deciding the scope of federal [habeas] review is that waiver involves the question of whether appellee has exercised or relinquished a *constitutional* right. As such, waiver becomes a federal question about which the federal courts are obligated to make their own independent determination.

> • • • • •

> 28 U.S.C. § 2254(d) was not intended to replace this constitutional obligation of the federal court.

*Id.* at 232.

▮▮▮▮ Based on *Miller v. Fenton* and *Williams v. Brewer*, I cannot defer to the state court's application of federal law to its factual findings. However, these cases and § 2254(d) require that I defer to the state court factual findings made in the course of deciding these federal claims if they are fairly supported by the record and if none of the exceptions enumerated in § 2254(d) are applicable.

Bannister does not argue that the factual findings of the Missouri Supreme Court are

---

**11.** Presumably, the Missouri Supreme Court's factual findings are based on the transcript from an extensive hearing held by the trial

court on Bannister's Motion to Suppress. Tr. I at 5–114.

not fairly supported by the record or that any of the other exceptions to § 2254(d) apply. He argues only that the § 2254(d) presumption should not apply because "[p]etitioner's affidavit states a prima facie claim that the waiver was not voluntary." Traverse at 103.[12] However, he never explains the basis for his conclusion that his affidavit "states a prima facie claim that the waiver was not voluntary." He also presents no other evidence to show that his waiver was involuntary.

After reviewing Bannister's affidavit, I do not find any basis for his conclusion that he involuntarily waived his *Miranda* rights. I do, however, find after independent review of the record that the Missouri Supreme Court's findings are fairly supported by the record and that no other exceptions to § 2254(d) apply. Therefore, the Missouri Supreme Court's factual findings are presumed correct. Accordingly, I will decide whether Bannister's right against self-incrimination, right to assistance of counsel and right to a fair trial were violated based on the facts found by the Missouri Supreme Court.

 The United States Supreme Court has thoroughly discussed what a defendant must do in order to waive his right to counsel after he requests counsel:

> We now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*

*Edwards v. Alabama,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981).

But even if a conversation taking place after the accused has "expressed his desire to deal with the police only through counsel," is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation.

*Oregon v. Bradshaw,* 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983) (plurality opinion).

Accordingly, the first step in the two-step inquiry for determining whether the accused voluntarily waived his right to counsel and right against self-incrimination is to determine whether "the accused himself initiates further communication, exchanges, or conversations with the police." The second step is to determine " 'whether a valid waiver of the right to counsel and the right to silence had occurred, i.e., whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.' " *Id.* at 1045, 103 S.Ct. at 2834–35 (quoting *Edwards,* 451 U.S. at 486 n. 9, 101 S.Ct. at 1885 n. 9).

In *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966), the Supreme Court placed on the government the burden of demonstrating the voluntariness of a waiver of *Miranda* rights:

> If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Escobedo v. State of Illinois,* 378 U.S. 478, 490, n. 14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977. This Court has always set high standards of proof for the waiver of constitutional rights,

---

12. Bannister requests that the record be expanded to include his affidavit. This request will be denied because the affidavit already appears to be part of the record; it is attached to his second Rule 27.26 motion. *See* Respondent's Exhibit K at 13.

*Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and we reassert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders.

Additionally, statements made subsequent to the exercise of a defendant's right to remain silent are admissible only if the police "scrupulously honored" the defendant's right to remain silent. *Michigan v. Mosley,* 423 U.S. 96, 103–04, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975).

Bannister contends that the State failed to meet its heavy burden of establishing that Bannister's statements were voluntary "and that he knowingly and voluntarily relinquished his right to have counsel present." Traverse at 107. Thus, Bannister argues that the second step of the test set forth in *Edwards* and *Oregon* for admissibility of a confession by an accused who earlier had requested counsel has not been established. Specifically, Bannister asserts that his confession was coerced because the police refused to provide medical attention until after he submitted to custodial interrogation. Bannister further asserts that because he was not afforded an opportunity to consult with counsel, he did not make a "knowing and intelligent" waiver of his right to counsel or right against self-incrimination.

Relying on the Missouri Supreme Court's factual findings which are deemed presumptively correct, Bannister voluntarily initiated conversations with the police *after* Bannister had requested a lawyer. Furthermore, all of the circumstances, including repeated advice of Bannister's *Miranda* rights, repeated expression by Bannister of a desire to talk to the police, the signing by Bannister of a waiver of his *Miranda* rights and the atmosphere of the

questioning, (*e.g.,* allowing Bannister to make telephone calls during the time he was cooperating with the sheriff plus no evidence of physical or psychological coercion), show that scrupulous attention was given to Bannister's rights.

Accordingly, the admission at trial of Bannister's properly obtained incriminating statements did not deny him his due process right to a fair trial. Thus, Bannister's ninth ground for relief will be denied.

### Ground 25

*Bannister's claim that he was denied his Sixth Amendment right to a jury trial by a representative segment of the community because the procedures for selection of jurors in McDonald County systematically excluded distinct segments of the community will be denied*

Bannister asserts that McDonald County systematically excluded teachers, clergymen and persons 65 years of age or older from the jury venire. Bannister, therefore, claims that his Sixth Amendment right to a representative jury venire was violated.[13]

Respondent argues that this claim is procedurally barred because Bannister failed to raise it in his Motion for a New Trial, in his direct appeal or in his first Rule 27.26 motion.

Bannister responds that the claim is not barred because the Missouri state courts decided this claim on its merits. Alternatively, Bannister contends that if there is any uncertainty about whether the state courts decided this claim on its merits, procedural bar does not apply. Bannister further argues that even if this claim was "technically" defaulted, federal review should be permitted because no state interest would be served by imposing the procedural bar.

 Bannister raised the instant claim in his second Rule 27.26 motion. In denying Bannister's second Rule 27.26 motion,

---

13. In his Traverse, Bannister claims his Sixth Amendment right was violated. In his Second Amended Habeas Petition, Bannister claims his Fourteenth Amendment right was violated. In either case, this claim will be denied.

the Circuit Court of McDonald County made the following findings:

1. That present Rule 29.15 does not apply for the reasons, among others, that sentence was pronounced before Jan 1, 1988 and that the appeal from the original case is over (not timely[) ].

2. That a prior Motion was filed, heard, and appealed under Rule 27.26.

3. That in the present Motion (para 8–1 & 2) Movant raises the issue of the constitutionality of Missouri's death penalty. This issue was considered and ruled in the direct appeal.

4. That in the present Motion (para 8–3) Movant raises the issue of ineffective assistance of counsel. This issue was considered and ruled in the first 27.26.

5. That in the present Motion (para 8–4) Movant raises the issue of denial of due process concerning [j]ury selection. Issues concerning the [j]ury [p]anel were raised, considered, and decided in both the direct appeal and the 27.26 appeal.

6. That all basic issues raised by the present Motion were raised and determined adversely to Movant in the direct appeal or 27.26 appeal.

7. That any issue stated in a different way in this Motion could have been stated this way, and thus raised, in the direct appeal or prior 27.26.

8. That Movant has not alledged [sic] or shown the Ct why any new ground in this Motion could not have been raised in the prior 27.26.

*Bannister v. State of Missouri,* CV–1–88–30–CC, Circuit Court of McDonald County, docket sheet entry of April 12, 1988, Respondent's Exhibit K at 3–4.

The Missouri Supreme Court affirmed the decision of the second Rule 27.26 court in a three sentence order stating: "Cause taken under submission on briefs. Judgment affirmed. All state remedies have been exhausted relating to Alan Bannister's conviction sentence and judgment." *Bannister v. State of Missouri,* slip op. No. 70715 (September 1, 1988).

Relying on Points 5 and 6 of the second Rule 27.26 court's findings, Bannister contends that the instant claim was raised and decided on the merits by the Missouri courts.

The court states very generally in Point 6 that "all basic issues" raised by the second Rule 27.26 motion were decided adversely to Bannister in the direct appeal or the first Rule 27.26 motion or appeal. The court also acknowledges in Points 7 and 8 that Bannister raised some issues or new grounds in the second Rule 27.26 motion that he did not raise on direct appeal or in his prior Rule 27.26 motion when he could and should have so raised them.

Rule 27.26(c), Missouri Rules of Criminal Procedure, requires that a motion to vacate include every ground known to the prisoner for vacating, setting aside, or correcting his conviction and sentence. *See* Mo. R.Crim.Proc. 27.26(c); *Oatsvall v. State,* 643 S.W.2d 634, 638 (Mo.App.1982); *Shepherd v. State,* 637 S.W.2d 801, 803 (Mo. App.1982). Rule 27.26(d) prohibits a court from entertaining successive Rule 27.26 motions where the new ground could have been raised in the original motion. *See* Mo.R.Crim.Proc. 27.26(d); *Oatsvall,* 643 S.W.2d at 638; *Shepherd,* 637 S.W.2d at 803. The Rule 27.26 movant has the burden of establishing that the new ground could not have been raised in the original motion. *Oatsvall,* 643 S.W.2d at 638 (citations omitted). Thus, where a prisoner such as Bannister alleges a new ground in a second Rule 27.26 motion that he could have raised in his original Rule 27.26 motion but fails to meet his burden of showing why he could not have asserted the ground in the original motion, the Rule 27.26 court must deny the claim for procedural default.

The second Rule 27.26 court's findings in Points 5, 6, 7 and 8 are factual findings entitled to the § 2254(d) presumption of correctness. Because Bannister has not established that one of the seven exceptions in § 2254(d) applies or that the findings of the Rule 27.26 court are not fairly supported by the record, or that by convincing evidence these findings are erroneous, the state court's factual findings as set forth in Points 5, 6, 7 and 8 are presumed correct.

Accordingly, the second Rule 27.26 court was required to and did, in fact, deny all of

Bannister's claims not previously presented in the direct appeal or first Rule 27.26 proceeding that could have been raised in those proceedings.

In Points 5, 6, 7 and 8, the second Rule 27.26 court was following Rule 27.26(c) and (d) and making findings required to conclude that Bannister's claim that McDonald County systematically excluded certain people from the jury venire was procedurally defaulted. The merits of the instant claim were never presented or decided in the Motion for New Trial, in the direct appeal or in the first Rule 27.26 motion or appeal therefrom.[14] Thus, giving the factual findings of the second Rule 27.26 court a presumption of correctness, the court denied Bannister's instant claim for procedural default.

Accordingly, this claim is procedurally barred from habeas review in this court.

Bannister further argues that it is unclear whether the state courts resolved the instant claim on the merits. Bannister argues that in the face of such ambiguity, I should refrain from imposing a procedural bar to habeas review.

No state court decided this claim on its merits. Although the second Rule 27.26 court and the Missouri Supreme Court were not crystal clear in stating that this claim was procedurally defaulted, logically there is no other way that the Missouri Supreme Court could have concluded that all state remedies were exhausted. The claim was procedurally barred pursuant to either Rule 27.26(c), (d) or Rule 29.15(n). As discussed previously, the second Rule 27.26 court appears to have applied Rule 27.26(c), (d). Thus, the merits of the claim

were not addressed by any Missouri state court because the second Rule 27.26 court denied the claim based on procedural default.

Bannister can escape the procedural bar only by showing "cause" and "prejudice" or a "fundamental miscarriage of justice" pursuant to *Wainwright v. Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506, and *Murray v. Carrier*, 477 U.S. at 492, 106 S.Ct. at 2647. Bannister has failed to make or attempt to make such showings. Therefore, this claim is procedurally barred.[15]

Because this claim is procedurally barred, Bannister's discovery request made in connection with this claim will be denied.

*Ground 21*

*Bannister's claim that he was denied his right to a jury trial by a representative cross-section of the community under the Sixth Amendment when the trial court refused to quash the jury panel selected pursuant to the Automatic Exemption Statute, Mo. Rev.Stat. § 494.031, which allowed persons 65 or older to be arbitrarily excused from jury service will be denied*

Bannister asserts in Ground 21 that he was denied due process under the Fourteenth Amendment and his right to a jury trial by a fair cross-section of the community when the trial court refused to quash the jury panel selected pursuant to Missouri's automatic exemption statute, Mo. Rev.Stat. § 494.031 (1986), which allows persons 65 years or older, women, clergy and teachers to be excused upon application to the court.

---

**14.** In fact, the Missouri Supreme Court notes in its decision on Bannister's direct appeal that "[a]ppellant concedes that the creation of the jury pool and selection of the panel was proper." *State v. Bannister*, 680 S.W.2d at 144.

**15.** Even if this claim were not barred for the reasons stated, Bannister's claim is barred for other reasons. Bannister states in his Traverse that additional discovery is necessary to establish his claim. Were I to grant Bannister's discovery requests, this claim would not have been properly exhausted in state court. "[I]f in federal court the petitioner relies on facts that give the case a significantly different and stronger evidentiary posture than it had when the state

court considered it the state courts must be given an opportunity to consider the evidence." *Laws v. Armontrout*, 834 F.2d 1401, 1413 (8th Cir.1987). In this case, however, Bannister has no currently available state remedies because the Missouri Supreme Court has found all his claims to be exhausted. Thus, I would not be able to review Bannister's claim with additional evidence produced from discovery unless Bannister could show cause for failing to raise his claim properly in state court and prejudice from the state court's failure to address the merits of the claim. *See Laws*, 834 F.2d at 1415. Bannister has made no such showing.

In his Traverse, Bannister tailors his claim to challenge only the exclusion of persons 65 years or older; he drops his claim as to teachers and clergy. However, Bannister's claim as to persons 65 years or older is procedurally barred because Bannister did not raise this claim on direct appeal.[16]

Based on my review of the record, Bannister failed to raise his current claim regarding exemption of persons 65 years or older until he filed his second Rule 27.26 motion. Also, this claim has not been considered on its merits by any state court.

It is well-established in Missouri law that where alleged errors are complained of in a motion for a new trial but are not pursued on direct appeal, those claims are deemed abandoned and are barred from subsequent review. *See State v. Raspberry*, 452 S.W.2d 169, 174 (Mo.1970); *State v. Williams*, 521 S.W.2d 29, 30–31 (Mo.App. 1975). Based on *Raspberry* and the analysis set forth at pp. 552–554, *supra*, the instant claim is procedurally barred under an adequate and independent state rule.

Bannister has not attempted to establish "cause" or "prejudice" or show that he fits within the "fundamental miscarriage of justice" exception. Accordingly, the instant claim is procedurally barred and all discovery requests in connection with this claim are denied.

## Ground 22

*Bannister's claim that, as administered by the State of Missouri, the death penalty violates the Eighth and Fourteenth Amendments to the United States Constitution because it results in a pattern of arbitrary and capricious sentencing and it inflicts unnecessary physical and psychological pain because of the method of execution used will be denied*

■■■ Bannister asserts in Ground 22 that the death penalty, as it is administered

in Missouri, violates the Eighth and Fourteenth Amendments because it results in a pattern of arbitrary and capricious sentencing and inflicts unnecessary physical and psychological pain.

Based on my review of the record, Bannister failed to raise this claim until he filed his second Rule 27.26 motion. This claim has never been considered on its merits by any state court but was instead denied based on procedural default.

Accordingly, based on the analysis set forth at pp. 552–554, *supra*, the instant claim is procedurally barred based on an adequate and independent state rule.

Bannister has not attempted to establish "cause" or "prejudice" or show that he fits within the "fundamental miscarriage of justice" exception. Therefore, the instant claim is procedurally barred and all discovery requests in connection with this claim are denied.

## Ground 23

*Bannister's claim that Mo.Rev.Stat. § 565.032.2(1) is unconstitutional will be denied*

■■■ Bannister asserts in Ground 23 that Mo.Rev.Stat. § 565.032.2(1) (1986) is unconstitutional because it provides that "one or more serious assaultive criminal convictions" may be considered as an "aggravating circumstance." Bannister argues that this provision is vague, indefinite and overbroad in violation of the Eighth and Fourteenth Amendments.

Based on my review of the record, Bannister failed to raise this claim until he filed his second Rule 27.26 motion. Also, this claim has never been considered on its merits by any state court but was instead denied due to procedural default.

Accordingly, based on the analysis set forth at pp. 552–554, *supra*, the instant claim is procedurally barred based on an adequate and independent state rule. Bannister has not attempted to establish

---

**16.** The distinction between Bannister's current claim regarding persons 65 years or older and his original claims concerning automatic exemption of teachers and clergy is significant because Bannister raised similar claims regarding teachers and clergy in his direct appeal. Those claims are not procedurally barred. However, Bannister has dropped his claims as to teachers and clergy.

"cause" or "prejudice" or show that he fits within the "fundamental miscarriage of justice" exception. Therefore, this claim is procedurally barred.

## Ground 24

*Bannister's claim that he was denied effective assistance of counsel by Gordon's failure to investigate Bannister's statements that the killing was not for money and occurred during a struggle motivated by revenge will be denied*

 Bannister asserts in Ground 24 that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments when Gordon failed to investigate his statements that the killing was not for money and occurred during a struggle motivated by revenge.

Based on my review of the record, Bannister failed to raise this claim until he filed his second Rule 27.26 motion. Also, this claim has never been considered on its merits by any state court but was instead denied due to procedural default.

Accordingly, based on the analysis set forth at pp. 552–554, *supra*, the instant claim is procedurally barred based on an adequate and independent state rule. Bannister has not attempted to establish "cause" or "prejudice" or show that he fits within the "fundamental miscarriage of justice" exception. Therefore, this claim is procedurally barred.

## IV. *Conclusion*

For the reasons stated, it is hereby ORDERED that Bannister's Second Amended Habeas Corpus Petition is denied.

**ORDER DENYING PETITIONER'S MOTION TO ALTER OR AMEND JUDGMENT OR, IN THE ALTERNATIVE, TO RECONSIDER THE AUGUST 23, 1991, ORDER DENYING PETITIONER'S REQUEST FOR WRIT OF HABEAS CORPUS, AFFIRMING THE AUGUST 23, 1991, ORDER AND DENYING THE NEWLY ASSERTED CLAIM FOR HABEAS CORPUS RELIEF**

On September 3, 1991, petitioner Alan J. Bannister filed his Motion to Alter or Amend Judgment or, in the Alternative, to Reconsider the August 23, 1991, Order Denying Petitioner's Request for Writ of Habeas Corpus. Pursuant to Rule 59(e), Federal Rules of Civil Procedure, Bannister requests reconsideration of each ground addressed in the August 23, 1991, order. Furthermore, he raises an entirely new ground for habeas corpus relief, that he was denied due process because the state provided him with insufficient notice of their intent to seek the death penalty, and requests this court to address it as well.

### I. *Standard for Post–Judgment Motion to Reconsider*

As a technical matter, neither the Federal Rules of Civil Procedure nor the Local Rules of this court provide for a "motion to reconsider" after a judgment has been entered against a party. Rather, depending on the timing and reasons for the motion, the appropriate procedure is to file either a motion to alter or amend the judgment pursuant to Rule 59(e), Federal Rules of Civil Procedure, or a motion for relief from a final judgment or order under Rule 60(b), Federal Rules of Civil Procedure.

Rule 59(e) was adopted to "make clear that the district court possesses the power" to rectify its own mistakes in the period immediately following the entry of judgment. *White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 450, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982). Rule 59(e) can be used to ask that a judgment be set aside in its entirety. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Generally, Rule 59(e) allows reconsideration of matters properly encompassed in a decision on the merits. *White*, 455 U.S. at 451, 102 S.Ct. at 1166. A motion to alter or amend under Rule 59(e) must rely on one of three major grounds: 1) an intervening change in controlling law; 2) the availability of new evidence not available previously; or 3) the need to correct a clear error of law or prevent manifest injustice. *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D.

625, 626 (S.D.Miss.1990); *Natural Resources Defense Council v. U.S. E.P.A.*, 705 F.Supp. 698 (D.D.C.1989), *vacated on other grounds*, 707 F.Supp. 3 (D.D.C.1989); *Kern–Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal. 1986), *aff'd in part, rev'd in part on other grounds*, 828 F.2d 514 (9th Cir.1987), *cert. denied*, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988).

Rule 60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Furthermore, Rule 60(b) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *United States v. Young*, 806 F.2d 805, 806 (8th Cir.) (per curiam), *cert. denied*, 484 U.S. 836, 108 S.Ct. 117, 98 L.Ed.2d 76 (1987).

Here, Bannister specifically states that his motion is in part filed pursuant to Rule 59(e). However, he did not specify in his motion which one of the three grounds he relies on. Thus, I will consider all three grounds in ruling on the motion.

Bannister also moves for reconsideration of the August 23, 1991, order without citing any particular rule. I will construe this portion of Bannister's motion as a motion under Rule 60(b). *See, e.g., Sanders v. Clemco Indus.*, 862 F.2d 161, 168 (8th Cir. 1988) (When a moving party files a "motion to reconsider" within ten days after the entry of judgment and "fails to specify the rule under which it makes a postjudgment motion, that party leaves the characterization of the motion to the court's somewhat unenlightened guess....").

## II. *Discussion*

After carefully reviewing the briefs filed by the parties, the numerous documents attached to Bannister's motion and the authorities cited by the parties, I conclude that Bannister is not entitled to relief from the final judgment under either Rule 59(e) or Rule 60(b).

Considering the motion pursuant to Rule 59(e), I conclude that 1) there has been no intervening change in controlling law; 2) Bannister has not established the availability of new evidence that was not available previously; and 3) there was no clear error of law or manifest injustice in denying Bannister's request for a writ of habeas corpus.

Considering the motion under Rule 60(b), I conclude that Bannister has not made "an adequate showing of exceptional circumstances" as required by *Young*. He has failed to establish that 1) there was mistake, inadvertence, surprise or excusable neglect; 2) new evidence was available which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); 3) an adverse party committed fraud, misrepresentation or other misconduct; 4) the judgment is void; 5) the judgment has been satisfied, released or discharged, or that it is no longer equitable that the judgment should have prospective application; or 6) any other reason justifies relief from the operation of the judgment.

Because Bannister has not presented a colorable reason recognized under Rule 59(e) or Rule 60(b) for amendment or alteration of the judgment or relief from it, his Motion to Alter or Amend Judgment or, in the Alternative, to Reconsider the August 23, 1991, Order, will be denied and the August 23, 1991, order will be affirmed.

In addition, Bannister's request for consideration of a newly asserted ground for habeas corpus relief, that he was de-

nied due process because the state provided insufficient notice of its intent to seek the death penalty, will be denied. Presentation of this claim for the first time in a Rule 59(e) motion constitutes an "abuse of the writ" under Rule 9(b), Rules Governing § 2254 Cases in the United States District Court, which provides:

> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

28 U.S.C. § 2254, Rule 9(b), Rules Governing § 2254 Cases in the United States District Courts.

In *Smith v. Armontrout*, 888 F.2d 530, 539–41 (8th Cir.1989), *stay denied*, 493 U.S. 1039, 110 S.Ct. 830, 107 L.Ed.2d 826 (1990), the Eighth Circuit Court of Appeals recognized that abuse of the writ occurs when a prisoner attempts to raise a new claim after judgment has been entered on the initial habeas corpus petition. The court refused to review new claims that were presented for the first time in a "motion to remand" that was filed in the appeal of the denial of the first habeas corpus petition. *Id.* at 540–41. The court stated:

> [The new claims for habeas corpus relief] come not in a habeas corpus petition as originally filed, but in a motion to remand, the purpose of which is to allow petitioner, after the case gets back to the district court, to amend his petition extensively and obtain an evidentiary hearing on a number of new issues. The motion to remand is the functional equivalent of a second or successive petition for habeas corpus. If a second petition making the new allegations asserted in the motion would be dismissed as an abuse of the writ, then the motion to remand should be denied.

*Id.* at 540–41.

■ Similarly, Bannister's assertion of the new claim in his Motion to Alter or Amend the Judgment, which was filed after his initial petition for habeas corpus relief was denied and judgment had been entered on it, is the functional equivalent of a second or successive petition for habeas corpus. Presenting the new claim in the Motion to Alter or Amend the Judgment is merely an attempt to avoid the abuse of the writ bar. Bannister has had ample time over the four years that this litigation has been pending to present this claim to this court in an appropriate and timely fashion, that is, within the context of his initial petition prior to entry of judgment.

To overcome the abuse of the writ bar, Bannister must show that his failure to present this new ground in his initial petition is excusable under the "cause and prejudice" standard. *McCleskey v. Zant*, — U.S. —, —, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991); *Smith*, 888 F.2d at 540–41.

Bannister has failed to show either cause or prejudice as required by *McCleskey*. Thus, the assertion of his new claim in the Motion to Amend or Alter the Judgment is an abuse of the writ.

■ In addition, Bannister procedurally defaulted on the newly asserted claim in that he failed to properly present it to the Missouri state courts for consideration. He did not raise the claim at trial, in his Motion for New Trial, on direct appeal or in his Rule 27.26 litigation.

Bannister contends that this claim is not procedurally defaulted because he presented it to the Missouri Supreme Court in a Motion to Recall the Mandate. However, the Eighth Circuit Court of Appeals has held that a motion to recall the mandate is not an appropriate method for exhausting state remedies. In *Williams v. Wyrick*, 763 F.2d 363, 365 (8th Cir.1985), the court stated:

> Williams' motions to recall the mandate were neither an appropriate nor adequate means of exhausting state remedies with respect to all claims asserted in his habeas petition. The established Missouri procedure for obtaining post-conviction relief is to file a motion pursuant to Missouri Supreme Court Rule 27.26. Williams' motions to recall the mandate

were ... an apparent attempt to circumvent the Rule 27.26 procedure.

Bannister's failure to present this claim to the state courts constitutes a procedural default that gives rise to an adequate and independent state procedural bar to review. *See Smith v. Jones,* 923 F.2d 588, 589 (8th Cir.1991); *Gilmore v. Delo,* 908 F.2d 385 (8th Cir.), *cert. denied,* 497 U.S. 1049, 111 S.Ct. 20, 111 L.Ed.2d 833 (1990); *Stokes v. Armontrout,* 893 F.2d 152, 155 (8th Cir. 1989), *stay denied,* 495 U.S. 926, 110 S.Ct. 2162, 109 L.Ed.2d 492 (1990). Accordingly, presentation of the instant claim in the Motion to Recall the Mandate did not exhaust Bannister's state remedies and the claim is now procedurally defaulted.

Because the claim is procedurally defaulted, it may not be reviewed absent a showing of cause and prejudice as required by *Murray v. Carrier,* 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986).

In attempting to establish cause and prejudice, Bannister argues:

> Appellate counsel's failure to brief this claim on direct appeal establishes cause. The lack of opportunity to gather mitigating evidence, which rendered counsel ineffective ... due to the State's insufficient notice of its intent to seek the death penalty, establishes prejudice.

Reply Suggestions in Opposition at 12.

The United States Supreme Court has articulated the following requirements for successfully establishing "cause" based on the conduct of counsel:

> [T]he question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington, supra,* we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense

impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, see *Reed v. Ross,* 468 U.S. at 16, 104 S.Ct. at 2910, or that 'some interference by officials,' *Brown v. Allen,* 344 U.S. 443, 486, 73 S.Ct. 397, 422, 97 L.Ed. 469 (1953), made compliance impracticable, would constitute cause under this standard.

Similarly, if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance.' *Cuyler v. Sullivan,* 446 U.S. 335, 355, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). Ineffective assistance of counsel, then, is cause for a procedural default. However, we think that the exhaustion doctrine, which is 'principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings,' *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. The question whether there is cause for a procedural default does not pose any occasion for applying the exhaustion doctrine when the federal habeas court can adjudicate the question of cause—a question of federal law—without deciding an independent and unexhausted constitutional claim on the merits. But if a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitu-

560

tional claim for which state court review might still be available. The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court 'to upset a state court conviction without an opportunity to the state court to correct a constitutional violation,' *Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950), and that holds true whether an ineffective assistance claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief.

*Murray v. Carrier,* 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986).

Bannister has not shown that he properly presented to the state courts as an independent claim the ineffective assistance of appellate counsel claim that he now advances as "cause" for procedural default. Therefore, based on *Murray,* I cannot consider Bannister's claim of ineffective assistance of appellate counsel as cause for his procedural default (or as an independent ground for habeas relief). Thus, petitioner has not established cause to overcome the procedural default of this claim.

Bannister also fails to establish prejudice. To demonstrate prejudice:

> The habeas petitioner must show 'not merely that the errors at … trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' … Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial.

*Id.* at 488–89, 106 S.Ct. at 2649.

Bannister's explanation regarding prejudice fails to demonstrate that the state's allegedly insufficient notice of intent to seek the death penalty *actually* prejudiced him by pervasively infecting his whole trial with constitutional error. Bannister has not shown that this alleged error made his whole trial fundamentally unfair. Thus, he has not shown prejudice sufficient to over-come procedural bar of the newly asserted claim.

In addition, Bannister has made no attempt to demonstrate that the "fundamental miscarriage of justice" exception to the cause and prejudice standard is applicable. *See Murray,* 477 U.S. at 495, 106 S.Ct. at 2649.

For these reasons, Bannister's new claim is procedurally barred and will not be reviewed by this court.

Accordingly, it is ORDERED that:

1) Bannister's Motion to Alter or Amend Judgment or, in the Alternative, to Reconsider the August 23, 1991, Order is denied;

2) the August 23, 1991, Order Denying Petitioner's Request for Writ of Habeas Corpus is affirmed; and

3) Bannister's newly asserted ground for habeas corpus relief is denied because it constitutes an abuse of the writ and is procedurally defaulted.